**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02676-NYW-MDB

KHALFAN KHAMIS MOHAMED,

     Plaintiff,

v.

SANTISTEVEN, in his individual and official capacities,
CONROY, in her individual and official capacities,
SEROSKI, in her individual capacities,
TURNER, in her individual and official capacities,
MEDRANO, in his individual and official capacities,
TRUE, in his individual and official capacities, and
UNITED STATES OF AMERICA,

     Defendants.

---

**ORDER ON RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter comes before the Court on the Recommendation of United States Magistrate Judge Maritza Dominguez Braswell ("Recommendation"), [Doc. 109, filed June 27, 2023],[1] on the Motion to Dismiss the Second Amended Complaint ("Motion to Dismiss"), [Doc. 81, filed November 29, 2022], filed by Defendants Santisteven, Medrano, Conroy, True, Seroski, Turner, and the United States of America (collectively, "Defendants"); and the Motion to Exclude Defendants' Exhibit and Other Materials Filed with Their Motion to Dismiss ("Motion to Exclude"), [Doc. 90, filed January 6, 2023], filed by Plaintiff Khalfan Khamis Mohamed ("Plaintiff" or "Mr. Mohamed"); as well as Plaintiff's Motion for Judicial Notice from Three Undisputed Facts During the Court's Upcoming Ruling on Plaintiff's Objections to the Magistrates

---

[1] This Court uses the convention [Doc.___] to refer to the docket entry and page number assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[sic] Judge Recommendations on the Motion to Dismiss ("Motion for Judicial Notice"), [Doc. 117, filed August 14, 2023]. Defendants have filed Objections to the Magistrate Judge's Recommendation on Motion to Dismiss ("Defendants' Objections"), [Doc. 110], to which Plaintiff has responded ("Plaintiff's Response"), [Doc. 114]. Plaintiff has also submitted pro se Objections to the Magistrate Judge's Recommendation on Motion to Dismiss ("Plaintiff's Objections"), [Doc. 116], to which Defendants have responded ("Defendants' Response"), [Doc. 118]. In the Recommendation, Judge Dominguez Braswell recommends that the Motion to Dismiss and the Motion to Exclude both be granted in part and denied in part. For the reasons below, the Court respectfully **OVERRULES in part and SUSTAINS in part** Defendants' Objection, **OVERRULES** Plaintiff's Objection, and **ADOPTS in part** the Recommendation, which is incorporated into this Order by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). The Court also **DENIES** the Motion for Judicial Notice.

## LEGAL STANDARDS

### I.    Motion to Dismiss

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (omission in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility

refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible"). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.   Judicial Notice

Rule 201 of the Federal Rules of Evidence permits a court to take "judicial notice" of a particular fact where that fact is not subject to reasonable dispute because it "is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The purpose of "judicial notice" is to permit the court to make a finding of fact in the absence of record evidence. *See United States v. Boyd*, 289 F.3d 1254, 1258 (10th Cir. 2002). The consequence of taking judicial notice is "to preclude a party from introducing contrary evidence and, in effect, directing a verdict against him as to the fact noticed." *Id.* (quotation omitted).

Judicial notice may be taken at any stage of a civil action, including at the motion to dismiss stage. Fed. R. Evid. 201(d); *see also Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (noting that under Rule 201, judicial notice may be taken "whether requested or not," and "at any stage of the proceeding"). A court may take judicial notice of its own files and records, as well as facts which are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). A court may also take judicial notice of other courts' files and records as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Hansen*, 641 F.3d at 1219 n.2 (quoting Fed. R. Evid. 201(b)(2)).

And the court may take judicial notice of filings in related cases. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

In the context of a motion to dismiss, a court may consider facts subject to judicial notice without converting a Rule 12(b)(6) motion into one for summary judgment. *Tal*, 453 F.3d at 1264 n.24. However, when a court takes judicial notice of documents, those documents may only be considered to show their contents, not to prove the truth of matters asserted therein. *See id.*

## III. Standard of Review

### A. Pro Se Litigants

First, the Court notes that Plaintiff is proceeding pro se. As such, the Court affords his filings a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Liberal construction "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). That said, it is not this Court's function "to assume the role of advocate for the pro se litigant." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110). Plaintiff's pro se status does not exempt him from complying with the procedural and substantive rules that govern all claims. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012)). The Court plays a neutral role in the litigation process and cannot assume the role of an advocate for the pro se party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

**B.      Magistrate Judge Recommendation**

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to.   An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of timely objection, the district court may review a [magistrate judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

## BACKGROUND

The following abbreviated factual background is derived from the allegations in Plaintiff's Second Amended Complaint, [Doc. 75, filed November 15, 2022], which are taken as true at this stage.  Plaintiff is incarcerated at the United States Penitentiary Administrative Maximum Facility ("ADX"), operated by the Bureau of Prisons ("BOP"), in Florence, Colorado.   In October and November 2019, Defendant Turner did not allow Plaintiff to make the same number of phone calls as similarly situated ADX inmates, so Plaintiff filed an administrative remedy ("AR") grievance with the BOP.   [*Id.* at ¶¶ 3–5].   In alleged retaliation for doing so, Defendant Turner blocked Plaintiff from contacting several local phone numbers used by family members in Tanzania through Voice over Internet Protocol ("VoIP").   [*Id.* at ¶¶ 7, 14, 24–25].   According to Plaintiff, his religion requires that he maintain close relationships with his family in Tanzania; as his only means to contact them is by phone, Defendant Turner's actions "prevent[ed] [Plaintiff] from participating in that religious duty imposed and motivated by [his] sincerely held religious belief." [*Id.* at ¶¶ 34–38].  As the hundreds of AR grievances Plaintiff has filed in his decades at ADX have "never worked," Plaintiff commenced a hunger strike on March 29, 2020, "as peaceful protest." [*Id.* at ¶¶ 31, 46].

Plaintiff declared his intention to strike to several ADX employees, as he wanted to "be provided with all appropriate medical attentions and treatments in accordance to the BOP's regulations." [*Id.* at ¶¶ 48–49]. According to Plaintiff, applicable BOP regulations require that an inmate engaging in a hunger strike receive a medical assessment within 72 hours. [*Id.* at ¶ 53]. However, according to the Second Amended Complaint, Defendant Santisteven advised Plaintiff to "eat or die" and repeatedly falsified records of food consumption to delay medical care, despite Plaintiff's increasingly severe condition. [*Id.* at ¶¶ 58–61]. Plaintiff's attempts to seek redress with ADX's warden, Defendant True, were unsuccessful. [*Id.* at ¶¶ 106, 181–89]. Several days into the strike, Defendant Santisteven applied restraints in a manner that caused Plaintiff "excruciating pain," and did not adjust the restraints when Plaintiff protested. [*Id.* at ¶¶ 127–29]. Defendant Medrano did not intervene, even as a nurse described Plaintiff's treatment as "unnecessary." [*Id.* at ¶¶ 131, 138]. Although Plaintiff received intermittent medical attention during the hunger strike, he describes Defendants Conroy and Seroski as ignoring his serious medical issues. [*Id.* at ¶ 179, 209]. Plaintiff ended the hunger strike on April 22, 2020, "because of [his] worsening conditions, fear of . . . death, and [his] realization that the officials in charge . . . were readily and completely prepared to act with every brutality and deliberate indifference necessary to get [him] out of the [hunger strike], alive or dead." [*Id.* at ¶ 172].

Throughout the hunger strike, and for some time afterward, Plaintiff suffered extensive medical repercussions from Defendants' alleged misconduct, including abdomen pain, throat pain, bitterness in mouth, loss of smell and taste, loss of control over urinating, painful swelling in extremities, passing blood, headache, and shortness of breath. [*Id.* at ¶¶ 173–76]. At one point, Plaintiff was unable to contact his family, despite several attempts, because ADX's voice-

identification system could not recognize his weakened voice, which had never happened before. [*Id.* at ¶¶ 119–20].

Plaintiff filed this action on September 30, 2021. [Doc. 1]. In the operative pleading, the Second Amended Complaint, [Doc. 75], he brings thirteen claims against Defendants: (1) First Amendment retaliation, against Defendant Turner, in her individual and official capacities ("Claim One"); (2) violation of the Religious Freedom Restoration Act ("RFRA"), against Defendant Turner, in her individual and official capacities ("Claim Two"); (3) deliberate indifference, against Defendant Santisteven, in his individual and official capacities ("Claim Three"); (4) excessive force, against Defendant Santisteven, in his individual and official capacities ("Claim Four"); (5) failure to intervene, against Defendant Medrano, in his individual and official capacities ("Claim Five"); (6) First Amendment retaliation, against Defendant Santisteven, in his individual and official capacities ("Claim Six"); (7) deliberate indifference, against Defendant Conroy, in her individual and official capacities ("Claim Seven"); (8) failure to protect and supervise, against Defendant True, in his individual and official capacities ("Claim Eight"); (9) deliberate indifference, against Defendant Seroski, in her individual capacity only ("Claim Nine"); (10) battery, against Defendant United States, under the Federal Tort Claims Act ("FTCA"), arising out of Defendant Santisteven's conduct ("Claim Ten"); (11) battery, against Defendant United States, under the FTCA, arising out of Defendant Santisteven's conduct ("Claim Eleven"); (12) negligent supervision, against Defendant United States, under the FTCA, arising out of Defendant Medrano's conduct ("Claim Twelve"); and (13) negligent supervision, against Defendant United States, under the FTCA, arising out of Defendant True's conduct ("Claim Thirteen"). [*Id.* at 7–27]. In the briefing on the Motion to Dismiss, Plaintiff abandoned his First Amendment claim against Defendant Turner, so only twelve claims remain for adjudication. [Doc.

91 at 3]; *see also* [Doc. 109 at 6 n.2]. Plaintiff seeks injunctive relief ordering Defendants to comply with applicable laws and regulations, as well as compensatory, punitive, and nominal damages, among other forms of relief. *See* [Doc. 75 at 31].

Defendants have moved to dismiss Claims One through Nine, Twelve, and Thirteen in the Second Amended Complaint, leaving only the FTCA negligent supervision causes of action set forth in Claims Ten and Eleven. [Doc. 81]. Plaintiff filed a response in opposition, [Doc. 91]; Defendants replied, [Doc. 94]; and Plaintiff filed a sur-reply, [Doc. 100]; *see also* [Doc. 99 (permitting Plaintiff to file a sur-reply)]. Relatedly, Plaintiff has filed the Motion to Exclude, in which he takes issue with the scope of the arguments made in the Motion to Dismiss, as well as Defendants' inclusion of the Declaration of D. Lazariuk, which concerns Plaintiff's contact with his family since March 2020. *See* [Doc. 90 at 1]; *see also* [Doc. 81-2]. Defendant has opposed the Motion to Exclude, [Doc. 95].

The Court referred both the Motion to Dismiss and the Motion to Exclude to Judge Dominguez Braswell, [Doc. 82; Doc. 93], who has prepared the instant Recommendation, in which she thoroughly analyzes the issues presented and recommends granting in part and denying in part the Motion to Dismiss and the Motion to Exclude, as discussed below. *See* [Doc. 109 at 7 n.3, 10–30]. As the Parties briefed their Objections to the Recommendation, Plaintiff filed the Motion for Judicial Notice. *See* [Doc. 117]. The Motion for Judicial Notice is also fully briefed. [Doc. 119, Doc. 122].

## ANALYSIS

### I.      The Recommendation

In the Recommendation, Judge Dominguez Braswell analyzes Plaintiff's claims in three groups.[2]  First, with respect to the RFRA claim, she redirects Defendants' standing argument—that Plaintiff had access to other communication channels to reach his family—to the merits, and finds that Plaintiff states a claim under RFRA.  *See* [Doc. 109 at 11].  Specifically, she concludes that Plaintiff "plausibly alleged that Officer Turner's purportedly retaliatory act substantially burdened Plaintiff's exercise of religion," and that Defendant Turner has not shown "a compelling interest in depriving Plaintiff of VoIP service under the circumstances."  [*Id.* at 16–17].  The Recommendation also rejects Defendant Turner's attempt to dismiss the RFRA claim on qualified-immunity grounds.  Finding that Plaintiff states a claim under RFRA means that Plaintiff meets his burden under the qualified-immunity constitutional violation prong.  [*Id.* at 18].  With respect to the clearly-established prong, Judge Dominguez Braswell "declines to address" Defendant Turner's argument in light of how Defendant frames the issue, the existence of a factual dispute, the brevity of the argument, and the undersigned's approach to a similar issue in a case brought by Plaintiff regarding his treatment during a prior hunger strike.  [*Id.* at 18–20].

Second, the Recommendation surveys the various *Bivens* claims and finds that none may proceed.  Supreme Court precedent explicitly forecloses a *Bivens* remedy for a First Amendment claim, whereas "Plaintiff's remaining *Bivens* claims, all brought under the Eighth Amendment, fail" because of the AR program's availability and because courts are not better positioned than

---

[2] As recognized in the Recommendation, Plaintiff withdrew Claim One.  [Doc. 109 at 6 n.2 (citing Doc. 91 at 3)].  Thus, this Court **DISMISSES** Claim One **with prejudice**.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186, 1195 (10th Cir. 2010) (explaining that, ordinarily, "the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice," unless amendment would be futile, such as when the claim is barred by the statute of limitations).

Congress to create a damages remedy.  [*Id.* at 22–23]; *see also* [*id.* at 23 ("This Court humbly admits it cannot anticipate all the ways in which a damages remedy here would impact government operations at a systemwide level.  That uncertainty forecloses relief.")].

Third, the Recommendation finds that the Second Amended Complaint states claims for negligent supervision under the FTCA.  With respect to his prima facie case against Defendant Medrano, Judge Dominguez Braswell determines that "Plaintiff's allegations amount to a plausible claim for negligent supervision under Colorado law because he plausibly alleges that Lieutenant Medrano knew or should have known that certain employees under his supervision would cause Plaintiff harm."  [*Id.* at 25].  And, as to Defendant True, she reasons that "Plaintiff submits only conclusory allegations that Warden True was or should have been aware of the alleged risk Doctor Conroy posed to Plaintiff," but finds the Second Amended Complaint's allegations sufficient with respect to Defendant True's knowledge of the actions of Defendants Medrano and Santisteven. [*Id.* at 26].  The Recommendation also rejects Defendants' argument that the discretionary function exception to the FTCA applies, as Plaintiff has adequately identified "discretion-constraining regulations or policies that take the challenged actions outside the scope of the discretionary function exception."  [*Id.* at 28–29].

Additionally, Judge Dominguez Braswell concludes that Plaintiff lacks standing to bring official-capacity claims for injunctive relief.  *See* [*id.* at 12].  She concludes that Plaintiff's requested injunctive relief, which would require Defendants to follow the law, is "too broad" and would not redress any ongoing injuries, as Plaintiff "has not adequately pled an immediate threat of future injury."  [*Id.* at 13].  Accordingly, the Recommendation would dismiss the official-capacity claims because the Court lacks jurisdiction to enter the relief sought.  Last, the Recommendation would grant in part and deny in part the Motion to Exclude.  Judge Dominguez

Braswell recommends denying it as to "Defendants' new or modified arguments in their most recent motion to dismiss," but granting it as to "the declaration attached to Defendants' motion, in part because it is not proper at this stage of the proceedings." [*Id.* at 7 n.3]. She reasons that, because Defendants' standing arguments with respect to the RFRA claim are best assessed under Rule 12(b)(6), [*id.* at 11], the Lazariuk Declaration need not be considered. [*Id.* at 11–12].

## II.    The Parties' Objections

In their Objections, Defendants seek de novo review with respect to two issues. First, Defendants contend that the Court should reach the clearly-established prong of Defendant Turner's qualified-immunity defense to the RFRA claim and that, on the merits, Defendant Turner is entitled to qualified immunity. *See* [Doc. 110 at 3–7]. Second, Defendants urge the application of the discretionary function exception to the FTCA claims, arguing that neither regulation identified by Judge Dominguez Braswell "dictates how Medrano or True were to supervise their subordinates and cannot serve as discretion-constraining mandates for purposes of Plaintiff's FTCA negligent supervision claims." *See* [*id.* at 9]; *see also* [*id.* at 7–10].

Meanwhile, Plaintiff focuses his Objections on the *Bivens* claims. He contends that the Recommendation improperly lumps his claims under the wrong standard and that, properly construed, they do not seek a new "context" for *Bivens* purposes because most of his claims (with a few potential exceptions) are for Eighth Amendment deliberate indifference, which is a recognized *Bivens* context. [Doc. 116 at 7–8]; *see also Carlson v. Green*, 446 U.S. 14 (1980). He also suggests that the AR process should not foreclose a *Bivens* remedy in light of the ineffectiveness of the process in his experience. *See* [Doc. 116 at 11–16].

### III.   Discussion

As an initial matter, the Parties do not object to the Recommendation to the extent that Judge Dominguez Braswell concludes (1) that the Motion to Exclude should be granted in part and denied in part, [Doc. 109 at 7 n.3, 11–12]; (2) that Claim Two states a RFRA claim under Rule 12(b)(6), and Defendants' argument about standing should be considered under that provision, [*id.* at 10–17]; (3) that Plaintiff lacks standing to bring any official-capacity claims for injunctive relief because he has failed to adequately plead an immediate threat of future injury, [*id.* at 20–23]; and (4) that Plaintiff states a prima facie case under the FTCA, [*id.* at 24–27].   In the absence of an objection, a district court may review a magistrate judge's recommendation under any standard it deems appropriate.   *See Summers*, 927 F.2d at 1167; *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a [magistrate judge's] factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.").   In this matter, the Court has reviewed the Recommendation to satisfy itself that there is "no clear error on the face of the record."[3]   Fed. R. Civ. P. 72(b), advisory committee's note to 1983 amendment.   Based on this review, the Court has concluded that the Recommendation is thorough, well-reasoned, and a correct application of the facts and the law. Finding no clear error in these unchallenged aspects of the Recommendation, the Court **ADOPTS** Judge Dominguez Braswell's conclusions as to these issues.

### A.   Motion for Judicial Notice

Next, the Court considers Plaintiff's Motion for Judicial Notice, as it potentially impacts what the Court considers in reviewing the Recommendation.   In the Motion for Judicial Notice,

---

[3] This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review.   Fed. R. Civ. P. 72(b).

Plaintiff moves the Court to consider three items in connection with its review of the Recommendation and the Parties' Objections: (1) to show the futility of the AR process, an October 12, 2022, memorandum prepared by the Department of Justice's Office of the Inspector General with the subject "Notification of Concerns Regarding the Federal Bureau of Prisons' (BOP) Treatment of Inmate Statements in Investigations of Alleged Misconduct by BOP Employees," ("OIG Memo") which Plaintiff attaches to the Motion for Judicial Notice, [Doc. 117 at 3–7, 12–27]; (2) to show that Defendants' position on the *Bivens* claims is inconsistent or incorrect, the litigation conduct of other ADX defendants in litigation in this District related to a prior hunger strike by Plaintiff, captioned *Mohamed v. Jones*, Civil Action No. 20-cv-02516-RBJ-MDB (D. Colo.), [*id.* at 7–8]; and (3) to show that the federal government is capable of foreclosing *Bivens* relief unambiguously by rulemaking or lobbying Congress for appropriate legislation (but has not done so), proposed rules related to inmate finances, [*id.* at 8–9].

In response, Defendants object to Plaintiff's Motion for Judicial Notice, arguing that the Court may not take judicial notice of the truth of the matters asserted in the OIG Memo and that there are no facts that are universally known and beyond reasonable controversy to be appropriate for judicial notice.  [Doc. 119 at 3–4].  Defendants further contend that the Court may not take judicial notice of actions taken by separate case, when the litigant strategy in *Jones* is not relevant to whether Mr. Mohamed had stated a cognizable *Bivens* claim in this action.  [*Id.* at 4–5].  Finally, Defendants argue that the Court cannot take judicial notice of the assertion that "the B.O.P. and the government have not gone to Congress . . . for another legislation that would clearly and explicitly put the above dispute, of whether prisoners can or cannot sue for money, to the end," Because it is not a "fact" that is generally known or readily derivable from sources whose accuracy

cannot be questioned.  [*Id.* at 5 (citing Doc. 117 at 8)].  On Reply, Mr. Mohamed continues to urge this Court to take judicial notice of these three items.  [Doc. 122].

This Court declines to take judicial notice of these three items for a more basic reason—namely, Mr. Mohamed has waived these arguments by not raising them within the briefing of the Motion to Dismiss.  His Response to the Motion to Dismiss was filed on January 6, 2023—after the issuance of the OIG Memo in October 2022; after the defendants in *Jones* filed their responsive motion in which they did not move to dismiss Mr. Mohamed's *Bivens* claim; and presumably after (or in the midst) of the BOP's alleged failure to lobby Congress for legislation.  While the Court may receive further evidence, Fed. R. Civ. P. 72, it is well-settled that issues raised for the first time in objections to a magistrate judge's recommendation are generally deemed waived. *See Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1159 (10th Cir. 2020) (citing *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1185 (10th Cir. 2011)).[4]  The Motion for Judicial Notice is thus respectfully **DENIED**.

### B.   Claim Two: RFRA

In Claim Two of the Second Amended Complaint, Mr. Mohamed alleges that, in 2020, Defendant Turner removed of three previously approved local telephone numbers from his phone list that permitted him to make lower cost phone calls to his family in Tanzania.  [Doc. 75 at ¶¶ 8–11, 32–42].  He further avers that Defendant Turner's conduct substantially burdened his ability to exercise his religious beliefs as a Muslim because he was unable to maintain familial

---

[4] Even if the Court substantively considered the three items for which Plaintiff seeks judicial notice, this Court would deny the relief sought.  The three items simply do not bear upon whether Plaintiff has adequately pleaded cognizable claims in this action. *See, e.g.*, *Muller v. Vilsack*, No. CV 13-0431 MCA/KK, 2015 WL 13666479, at *4 (D.N.M. Mar. 30, 2015) (declining to take judicial notice when the adjudicative facts proffered were not relevant to the pending motions to dismiss).

relationships central to his faith.  [*Id.*].  Defendants moved to dismiss Claim Two, arguing *inter alia* that Defendant Turner is entitled to qualified immunity because it was not clearly established that "an officer violates RFRA by blocking a convicted terrorist's access to local VoIP phone numbers to minimize a security risk, where the use of those numbers is prohibited by BOP policy, and where the prison does not unduly restrict the prisoner's use of the regular phone system, written communication, or in-person visits for the prisoner to communicate with his family."  [Doc. 81 at 15].  Judge Dominguez Braswell identified three issues with Defendants' qualified immunity arguments:  (1) Defendants' framing assumes Officer Turner blocked Plaintiff's numbers to minimize a security risk; (2) Defendants' framing assumes the truth of the BOP policy forbids the use of VoIP phone numbers or call forwarding systems, when the Court may only take judicial notice of the contents of the BOP's Program Statement and not the truth; and (3) there appears to be a factual dispute over policies and practices.  [Doc. 109 at 18–19].  Judge Dominguez Braswell then relied on this Court's ruling in *Jones*,[5] and declined to address qualified immunity based on Defendants' failure to adequately present the defense.  [*Id.* at 20].

Defendants object, arguing that they have adequately presented their argument that Plaintiff's alleged RFRA violation is not clearly established, and therefore, pursuant to the authority from the United States Court of Appeals for the Tenth Circuit issued in July 2022.  Relying upon *Hunt v. Montano*, 39 F.4th 1270 (10th Cir. 2022), Defendants contend that the Court must analyze the defense and to decline to do so would impermissibly shift Plaintiff's burden to Defendants.  [Doc. 110 at 4–6].  Defendants then proceed to argue that Mr. Mohamed had failed

---

[5] This Court, in turn, relied upon two unpublished district court opinions that held that the plaintiff's burden arises only when the qualified-immunity doctrine had been adequately presented, including one that had been affirmed by the Tenth Circuit in an unpublished opinion. [Doc. 109 at 19–-20 (citing *Mohamed v. Jones*, No. 20-cv-02516-RBJ-NYW, 2022 WL 523440 at *21 (D. Colo. Feb. 22, 2022))].

to carry his burden of identifying sufficient authority to establish that Defendant Turner's conduct as alleged in the Second Amended Complaint was a clearly established violation of RFRA. [*Id.* at 6–7].

As an initial matter, this Court concurs with Judge Dominguez Braswell that Defendants incorrectly framed the alleged constitutional violation. Indeed, the Tenth Circuit recently recognized the significance of the stage of the proceeding in the qualified immunity analysis: "On a motion to dismiss, it is the defendant's conduct <u>as alleged in the complaint</u> that is scrutinized for constitutionality." *Bledsoe v. Carreno*, 53 F.4th 589, 607 (10th Cir. 2022) (citation and alteration marks omitted) (emphasis in original). The *Bledsoe* court rejected the defendants' attempt to substitute their own characterization of the conduct for the plaintiff's allegations. *Id.* at 608. Therefore, the appropriate framework is whether it was clearly established that, as of 2020, Defendant Turner's removal of three VoIP telephone numbers that facilitated Mr. Mohamed's familial relationships placed a substantial burden on his Muslim faith and thus violated RFRA.

Despite Defendants' incorrect characterization of the RFRA violation as alleged by Mr. Mohamed, there is no question that Defendants invoked qualified immunity and argued that Plaintiff's RFRA claim was not clearly established. [Doc.81 at 15]. And following *Hunt*, which Defendants recognize was issued after Judge Dominguez Braswell issued the Recommendation in this action, it appears that Defendants' limited argument is sufficient to trigger this Court's consideration of the issue. In reviewing the two cases cited by Mr. Mohamed, i.e., *Williams v. Hansen*, 5 F.4th 1129 (10th Cir. 2021), and *Ralston v. Cannon*, 884 F.3d 1060 (10th Cir. 2018), this Court respectfully agrees that neither case clearly establishes that the denial of the use of VoIP telephone numbers to communicate with overseas family members violated RFRA as of 2020. In addition, mindful of the admonition of the *Williams* court that the Court's "review [of whether a

right is clearly established] is not limited to the opinions cited by" Mr. Mohamed and is instead a "de novo review of a legal issue, which requires consideration of all relevant case law," 5 F.4th at 1133, this Court undertook its own examination of the relevant case law. Such examination yielded no authority in the Supreme Court or the Tenth Circuit, or the weight of other circuit courts, for this Court to conclude that Mr. Mohamed's RFRA violation as pled in his Second Amended Complaint was clearly established as of 2020.

Accordingly, this Court respectfully **SUSTAINS** Defendants' Objection as to the application of qualified immunity to Claim Two and **DISMISSES** Claim Two **with prejudice** on the second prong of the qualified immunity analysis. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that trial courts have the discretion to consider the two prongs of qualified immunity in any order it chooses, and that if the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity); *Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (directing the district court to enter dismissal of claim based on qualified immunity with prejudice).

### C.     Claims Three through Nine: *Bivens*

In Claims Three through Nine, Plaintiff asserts various violations of his rights under the First, Fourth, and Eighth Amendments through *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court determined that even absent statutory authorization, it would imply a cause of action for damages for a persons injured by federal officers who violated the Fourth Amendment prohibition against unreasonable search and seizure. *Ziglar v. Abbassi*, 582 U.S. 120, 131 (2017) (citing *Bivens*, 403 U.S. at 397). In the following years, the Supreme Court recognized two additional implied causes of action involving constitution violations: *Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a *Bivens* claim based on a violation of the Fifth Amendment Due Process Clause in the context of gender

discrimination), and *Carlson*, 446 U.S. 14 (recognizing a *Bivens* claim based on deliberate indifference to a federal inmate's serious medical needs).   In her Recommendation, Judge Dominguez Braswell concluded under *Egbert v. Boule*, 142 S. Ct. 1792 (2022), and *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022), that none of Plaintiff's *Bivens* claims are viable and recommended the dismissal of all of them.  [Doc. 109 at 20–21].

Mr. Mohamed objects.  [Doc. 116].  First, he contends that the Recommendation failed to distinguish between his medical deliberate indifference claims and his excessive force claims.  [*Id.* at 3].  Second, he argues that *Egbert* did not alter the two-step inquiry as to the viability of a *Bivens* claim:  (1) whether the claim presents a new *Bivens* context and (2) if the claim arises in a new context, whether there were "special factors" indicating that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." [*Id.* at 4–6].  Third, he asserts that Judge Dominguez Braswell erred by collapsing the two-step inquiry into a single question, i.e., "whether there is *any* rational reason (even one) to think that Congress is better to weigh the costs and benefits of allowing a damages action to proceed."  [*Id.* at 4]; *see also Egbert*, 142 S. Ct. at 1805.  These errors are significant in Mr. Mohamed's view because he asserts that the majority of his *Bivens* claims involve deliberate indifference to his serious medical needs (Claims Three, Seven, and Nine) that fall squarely within *Carlson*, which recognized a viable *Bivens* action for inadequate medical care under the Eighth Amendment, and do not even trigger the second step of the inquiry.  [Doc. 116 at 7].  Similarly, Mr. Mohamed contends that Claims Five and Eight fall within *Carlson* and *Farmer v. Brennan*, 511 U.S. 825 (1994), which recognized a *Bivens* cause of action for deliberate indifference based on failure to prevent harm.  With respect to Claims Four and Six, Mr. Mohamed implicitly concedes that these

claims present a new *Bivens* context, but he should be permitted to pursue these claims under *Bivens* because an administrative remedy was not available to him.[6]  [*Id.* at 8].

Defendants responded to Plaintiff's Objections. [Doc. 118].  In their Response, Defendants argue that Judge Dominguez Braswell properly recommended the dismissal of Claim Six, alleging First Amendment retaliation, because *Egbert* expressly recognized such.  [*Id.* at 2].  Second, Defendants urge this Court to conclude that the dismissal of Plaintiff's remaining *Bivens* claims is appropriate because the BOP's administrative remedy procedure is an adequate remedy that provides an alternative remedial structure, [*id.* at 2–6], and Plaintiff's allegations that administrative remedies are unavailable to him personally is misplaced.  [*Id.* at 6–7].  Defendants further contend that courts after *Egbert* have also found that the Department of Justice's Office of Inspector General is a separate alternative remedial structure that precludes inferring a *Bivens* cause of action.  [*Id.* at 7–8].  Defendants insist that all of Plaintiff's *Bivens* claims arise in a new context, and thus, this Court need not resolve whether the proper inquiry is two- or one-step.  [*Id.* at 8–9].

For the purposes of analysis, this Court divides the claims as Mr. Mohamed requests, i.e., between the claims that do not invoke deliberate indifference (Claims Four, Five, Six, and Eight) and the claims that do (Claims Three, Seven and Nine).  But ultimately, following *Egbert* as it must, this Court concludes that this is a distinction without a difference.

---

[6] Plaintiff also filed a Reply in support of his Objection [Doc. 120], which is not contemplated by the Federal Rules of Civil Procedure, the District of Colorado's Local Rules of Civil Practice, or this Court's Uniform Civil Practice Standards.  *See, e.g.*, Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).  Plaintiff did not seek leave to file such Reply, nor does the Reply itself identify any such authority to do so.  Accordingly, this Court **STRIKES** the Reply.  Even if this Court were to substantively consider the Reply, it would not change its analysis.

*Claims Four, Five, Six, and Eight.*  With respect to Claim Six, the Supreme Court has explicitly held that there is no *Bivens* action for First Amendment retaliation.  *See Egbert*, 142 S. Ct. at 1807.  Courts in this District have unequivocally followed such binding precedent, *see, e.g.*, *Straker v. Stancil*, No. 20-cv-03478-WJM-STV, --- F. Supp. 3d ---, 2023 WL 4962147, at *3 (D. Colo. Aug. 3, 2023), and this Court does as well.

With respect to Claims Four, Five, and Eight, each of these causes of action relies on an excessive force, failure-to-protect, or failure-to-intervene theory.  This Court had previously concluded that it was appropriate to extend a *Bivens* remedy to excessive force allegations, based, *inter alia*, on the fact the *Bivens* itself included allegations of use of unreasonable force.  *See Smith v. Trujillo*, No. 20-cv-00877-RBJ-NYW, 2021 WL 1799400, at *1 (D. Colo. Mar. 26, 2021), *report and recommendation adopted*, 2021 WL 1608829 (D. Colo. Apr. 26, 2021); *McCullon v. Parry*, No. 18-cv-00469-NYW, 2021 WL 877718, at *4 (D. Colo. Mar. 9, 2021) (citing *Bivens*, 403 U.S. at 389)).  In doing so, this Court acknowledged the split of authority within the District, but proceeded nonetheless because there was no controlling Supreme Court or Tenth Circuit precedent addressing the issue.  *McCullon*, 2021 WL 877718, at *5; *Gifford v. Jackson*, No. 20-cv-02418-RMR-NYW, 2021 WL 5067485, at *7 (D. Colo. July 22, 2021).  The Tenth Circuit's ruling in *Silva*, however, have changed the legal landscape.  *See Smith v. Trujillo*, No. 20-cv-00877-RBJ-STV, 2023 WL 5434715, at *3 (D. Colo. Apr. 27, 2023).  In reviewing the substance of Plaintiff's theories against the recognized *Bivens* causes of action identified by the Supreme Court in *Bivens*, *Davis*, and *Carlson*, this Court concludes that Claims Four, Five, and Eight present dissimilar factual allegations and thus, are clearly new in context and not viable in light of *Silva*, which found that alternate remedial means were available to the plaintiff for the disposition of his claims.  *Silva*, 45 F.4th at 1141.

*Claims Three, Seven, and Nine:  Deliberate Indifference Claims.*  With respect to Claims Three, Seven, and Nine, each of these claims pleads facts arising from the delay or denial of medical care resulting from serious medical needs created by Plaintiff's hunger strike.  Mr. Mohamed insists that these claims fall squarely within *Carlson*, and therefore, are not subject to Judge Dominguez Braswell's analysis.  Defendants disagree, contending that after *Egbert*, courts may not rely upon "broad similarities" or "almost parallel circumstances" in assessing whether the *Bivens* theory arises in a new context.  [Doc. 118 at 9–10].

The *Silva* court grappled with history of *Bivens* and the aftermath of *Egbert*.  First, the Tenth Circuit concluded that expanding *Bivens* was not simply a disfavored, but "it is an action that is impermissible in virtually all circumstances."  *Silva*, 45 F.4th at 1140.  Second, most relevant to this Court's inquiry with respect to Claims Three, Seven, and Nine, the lens by which the Court judges whether or not a particular set of facts presents a new context for a *Bivens* action, the *Silva* court noted that a case with virtually identical factual circumstances to *Bivens* was still insufficient to sustain an implied right under *Bivens.  Id.*  And since *Silva*, a court in this District has cogently described various approaches by trial courts around the country in determining whether a *Bivens* claim arises in a new context.  *See Qazi v. Seroski*, No. 22-cv-00014-PAB-MEH, 2023 WL 3871969, at *5–6 (D. Colo. May 11, 2023), *report and recommendation adopted*, 2023 WL 3866406 (D. Colo. June 7, 2023).

This Court concludes that it cannot use this case's broad similarities with *Carlson* to conclude that Plaintiff's *Bivens* claims do not arise in a new context simply because they are based on deliberate indifference to his serious medical needs.  Instead, this Court must heed both Supreme Court and Tenth Circuit analysis and engage in a more focused, nuanced analysis.  In

*Ziglar*, the Supreme Court offered the following examples to guide the analysis of whether a case presents a new *Bivens* context:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40.  In applying this standard, this Court concludes that Plaintiff's case differs in a meaningful way from *Carlson*.  In *Carlson*, the plaintiff alleged that prison officials:

> being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of Jones' chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital.  The complaint further allege[d] that Jones' death resulted from these acts and omissions, that petitioners were deliberately indifferent to Jones' serious medical needs, and that their indifference was in part attributable to racial prejudice.

*Carlson*, 446 U.S. at 16 n.1.  Mr. Mohamed does not allege that he had any chronic medical conditions like *Carlson* that were ignored or mistreated.  And *Carlson* did not deal with serious medical issues arising from a voluntarily hunger strike.  The controlling authority compels this Court to conclude that Claims Three, Seven, and Nine all differ meaningfully from *Carlson* and present a new *Bivens* context.

As a result, Mr. Mohamed's Objection is largely inapposite.  This Court need not address or resolve whether the two-step inquiry has collapsed into a one-step inquiry, and **ADOPTS** Judge Dominguez Braswell's analysis that all of Mr. Mohamed's *Bivens* claims, even the ones rooted in medical indifference, are not viable because the BOP's AR program offers an independently

sufficient ground to foreclose a *Bivens* claim and this Court cannot say it is "undoubtedly better positioned than Congress to create a damages action" here.  [Doc. 109 at 22–23].  In so concluding, this Court joins other courts in this District to reflect upon the fact that had the alleged events in this case occurred in state correction facility, Mr. Mohamed would have at least a cognizable claim to pursue and notes that this disparity underscores the need for Congress to act.  *See Straker*, 2023 WL 4962147, at *3; *Smith*, 2023 WL 5434715, at *5.

Finally, the Court pauses to voice its concern that broad application of *Egbert* and *Silva* will insulate virtually all misconduct within prison walls by federal actors from liability for damages.  *Cf. McCullon*, 2021 WL 877718, at *7 (finding an implied cause of action for excessive force under the Eighth Amendment and *Bivens* because "[t]o find otherwise would allow individual federal officials to escape liability for the alleged unconstitutional use of force, depending on the timing of the act or so long as they provide adequate medical care afterwards— even with dire consequences"); *Noe v. United States*, No. 21-cv-01589-CNS-STV, 2022 WL 18587706, at *9 (D. Colo. Dec. 14, 2022) (observing that "a federal prison official may sadistically beat an inmate to within an inch of his life and that inmate will not have a civil remedy against that prison official—after all, the inmate may file a grievance pursuant to the BOP Administrative Remedy Program"), *report and recommendation adopted*, 2023 WL 179929 (D. Colo. Jan. 13, 2023).  Of course, not all allegations of abuse are true (though at the motion to dismiss phase, this Court must presume the truth of Mr. Mohamed's factual allegations), but under the case law as it is developing, there will be limited opportunity to pursue that truth through the judicial system.

### D.    Claims Twelve and Thirteen: FTCA

Finally, this Court turns to the viability of Claims Twelve (based on Defendant Medrano's actions, including on April 15, 2020, during an escort between Plaintiff's cell and his second

hunger strike medical examination) and Thirteen (based on Defendant True's actions, including with respect to retaining other Defendants).  As discussed above, no Party challenged whether Plaintiff stated a cognizable prima facie claim under the FTCA for either claim.  *Compare* [Doc. 109] *with* [Doc. 110; Doc. 116].  Defendants also agree that Judge Dominguez Braswell "correctly identified the question as 'whether Plaintiff identifies any discretion-constraining regulations or policies that take the challenged actions outside the scope of discretionary function exception.'" [Doc. 110 at 8 (quoting Doc. 109 at 28)].  But Defendants argue that Judge Dominguez Braswell erred when she determined that 28 C.F.R. § 549.62(a) and 28 C.F.R. § 549.64(c) constrained Defendant Medrano's judgment and applied to Defendant True.  [*Id.*]

While the FTCA permits private rights of action for certain torts through a waiver of the United States's sovereign immunity, the "discretionary function exception removes from the waiver any 'claim . . . based upon the exercise o[r] performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency.'"  *Knezovich v. United States*, --- F.4th ---, No. 22-8023, 2023 WL 5988300, at *3 (10th Cir. Sept. 15, 2023) (quoting 28 U.S.C. § 2680(a)).  Courts apply a two-step test to determine whether the discretionary function exception applies.  *See Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  First, a court considers "whether the action is a matter of choice for the acting employee."  *Id.*  Second, the court determines "whether that judgment is of the kind that the discretionary function exception was designed to shield."  *Id.*  If the judgment might be based on policy considerations, then the second prong is met.  *See Steele v. United States*, No. 09-cv-01557-CMA-CBS, 2010 WL 2501200, at *3 (D. Colo. June 15, 2010) (citing *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008)).

As Judge Dominguez Braswell recognizes, the BOP owes a duty to provide for the safekeeping and care of federal inmates, and the BOP retains discretion in the means it uses to

fulfill that duty. *See* [Doc. 109 at 27–28]. In finding that the discretionary function exception did not apply, Judge Dominguez Braswell focused upon Plaintiff's allegations that Defendants Medrano and Santisteven colluded in falsifying Plaintiff's food-intake records to avoid referring Mr. Mohamed to medical or mental health evaluation. [*Id.* at 28–29 (citing Doc. 75 at ¶¶ 53, 57–67, 183)]. But Defendants are correct that Claims Twelve and Thirteen are not based on a theory of *negligence* arising out of Defendants Medrano's and Santisteven's conduct with respect to Plaintiff's food trays, but upon a theory of *negligent supervision* arising from the April 15, 2020, escort described in the Second Amended Complaint. *See* [Doc. 75 at ¶¶ 217–218]. Neither 28 C.F.R. § 549.62(a) (BOP "[s]taff shall refer an inmate who is observed to be on a hunger strike to medical or mental health staff for evaluation") or 28 C.F.R. § 549.64(c) (BOP "[s]taff shall remove any commissary food items and private food supplies of the inmate while the inmate is on a hunger strike") sets forth a mandatory course of conduct for transport of an inmate who is observed to be on a hunger strike, or addresses how such transport must be supervised. *Cf. Steele*, 2010 WL 2501200, at *4. Thus, the Court presumes that Defendants' actions are grounded in policy because no statute, regulation, or policy sets forth a required course of conduct, and Plaintiff bears the burden of establishing that the discretionary function exception does not apply. *See Ball v. United States*, 967 F.3d 1072, 1079 (10th Cir. 2020).

Plaintiff has identified no other policies or regulations that specifically dictate how either Defendant Medrano or Defendant True must use their BOP staff or how guards must be supervised. *See generally* [Doc.75; Doc. 91]. Absent any such showing, this Court concludes that Mr. Mohamed has failed to meet his burden and that the negligent supervision theories set forth in Claims Twelve and Thirteen, arising from Defendants' alleged conduct during the April 15, 2020, escort, fall within the discretionary function exception based on the general understanding that

prison staffing decisions are discretionary.  *See Steele*, 2010 WL 2501200, at *4 (collecting cases). A sister court in Kansas has concluded that the maintenance of prison security, including during controlled inmate movement, is grounded in economic, social, and political policies, noting that limitations on resources play heavily into a prison's ability to monitor and surveil its population. *See Queen v. United States*, No. 05-3341-KHV, 2007 WL 628182, at *2 (D. Kan. Feb. 26, 2007); *see also Dretar v. Smith*, 752 F.2d 1015, 1017 n.2 (5th Cir. 1985) ("Supervising employees is certainly a discretionary function."); *LeRose v. United States*, 285 F. App'x 93, 97 (4th Cir. 2008) (citing *Suter v. United States*, 441 F.3d 306, 312 n.6 (4th Cir. 2006)) ("The BOP's decisions regarding the hiring, supervision and retention of [a former federal correctional officer] are precisely the type of decisions that are protected under the discretionary function exception.  We previously decided that government employers' hiring and supervisory decisions are discretionary functions."); *Dudley v. United States*, No. 4:19-cv-317-O, 2020 WL 532338, at *12 (N.D. Tex. Feb. 3, 2020) ("Furthermore, the supervision of correctional officers requires a large amount of decision making and balancing of competing objectives that courts have found are discretionary functions.").

For these reasons, this Court **SUSTAINS** Defendants' Objection as to Claims Twelve and Thirteen and applies the discretionary function exception to **DISMISS with prejudice** these two causes of action.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)     Defendants' Objections to the Magistrate Judge's Recommendation on Motion to Dismiss [Doc. 110] are **OVERRULED in part** and **SUSTAINED in part**;

(2)     Plaintiff's Objections to the Magistrate Judge's Recommendation on Motion to Dismiss [Doc. 116] are **OVERRULED**;

(3)     The Court **ADOPTS in part** and **DECLINES TO ADOPT in part** the Recommendation of United States Magistrate Judge Maritza Dominguez Braswell [Doc. 109];

(4)     Defendants' Motion to Dismiss the Second Amended Complaint [Doc. 81] is **GRANTED in part** and **DENIED in part**;

(5)     Claims One through Nine, Twelve, and Thirteen are **DISMISSED with prejudice**;

(6)     Claims Ten and Eleven **REMAIN**;

(7)     Plaintiff's Motion to Exclude Defendants' Exhibit and Other Materials Filed with Their Motion to Dismiss [Doc. 90] is **GRANTED in part** and **DENIED in part**;

(8)     Plaintiff's Motion for Judicial Notice from Three Undisputed Facts During the Court's Upcoming Ruling on Plaintiff's Objections to the Magistrates [sic] Judge Recommendations on the Motion to Dismiss [Doc. 117] is **DENIED**; and

(9)     The Clerk of Court is **DIRECTED** to mail a copy of this Order to:

Khalfan Khamis Mohamed
#44623-054
FLORENCE ADMAX
U.S. PENITENTIARY
Inmate Mail/Parcels
PO BOX 8500
FLORENCE, CO 81226

DATED:  September 29, 2023                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge