IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02676-NYW-MDB

KHALFAN KHAMIS MOHAMED,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

### PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT (ECF No. 174)

---

Defendant moves to dismiss Claims 4, 5, 8, and 10 of the Third Amended Complaint, ECF No. 174, under Fed. R. Civ. P. 12(b)(1) and (b)(6).[1]

### FACTUAL BACKGROUND

This case concerns the conduct of prison staff during Plaintiff's three-week hunger strike in 2020. Plaintiff's remaining Federal Tort Claims Act ("FTCA") claims are based on an overlapping set of facts. Plaintiff alleges that Santistevan, a correctional officer at the ADX, refused to refer Plaintiff to the medical staff for examination several days after Plaintiff started his hunger strike. ECF No. 174 ¶¶ 24-26, 141. Plaintiff also alleges that, before asking Santistevan to refer him to the medical team, Plaintiff directly informed the medical staff of his hunger strike, both orally and in writing, and that the

---

[1] The Court denied Plaintiff leave to amend Claims 1, 2, 3, and 9 in the Third Amended Complaint. *See* ECF No. 173 at 13. Defendant does not move to dismiss Plaintiff's intentional tort claims, Claims 6 and 7. Defendant did not confer with Plaintiff regarding this motion because Plaintiff is an unrepresented prisoner. D.C.COLO.LCivR 7.1(b)(1).

doctor was aware of his hunger strike. *Id.* ¶¶ 13-17. Plaintiff alleges that Santistevan also: (1) misrepresented Plaintiff's food intake on prison records to make it look like Plaintiff was eating when he was not, *id.* ¶¶ 28, 34, 40, 61 & 141; (2) failed to remove commissary food items from Plaintiff's cell after he started his hunger strike, although Plaintiff does not allege that he consumed any of them, *id.* ¶ 141; and (3) intentionally used excessive force against him during an escort to a medical exam, *id.* ¶¶ 149, 154, 158. Plaintiff also alleges that Lt. Medrano and the Warden failed to intervene to correct or prevent Santistevan's conduct. *Id.* ¶¶ 175-78, 186-88. Plaintiff brings claims against the United States for Santistevan's negligence (Claims 4 & 5) and the failure to intervene by Medrano and the Warden (Claims 8 & 10).

## ARGUMENT

### I. Plaintiff fails to state a claim for Santistevan's negligence (Claim 4).

Claim 4 alleges three different bases for negligence: (1) Santistevan refused to refer Plaintiff to the medical staff during his hunger strike (Claim 4A); (2) Santistevan intentionally misrepresented Plaintiff's food intake on prison records during his hunger strike (Claim 4B); and (3) Santistevan failed to remove food items from Plaintiff's cell after he started his hunger strike (Claim 4C). ECF No. 174 ¶ 141. None of these allegations supports a claim under the FTCA.

#### A. Claim 4A:  No causation or injury

Claim 4A fails because Plaintiff does not allege that Santistevan's failure to refer him to the medical staff delayed his medical assessment or caused him any injury. To state a claim for negligence, a plaintiff must allege "a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, i.e., that the

2

defendant's breach caused the plaintiff's injury." *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002).  To prevail on causation, a plaintiff must show that the defendant's "negligence was a 'substantial factor' in causing" the injury; "'if an event other than the defendants' negligence appears predominant, the defendants' negligence cannot be considered a substantial factor.'" *Roland v. Letgo, Inc.*, No. 22-1456, 2024 WL 372218, at *4 (10th Cir. Feb. 1, 2024) (quoting *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987)).

      Plaintiff does not allege facts showing that Santistevan's conduct delayed his medical assessment.  Plaintiff pleads that Santistevan "refus[ed] to refer me to the medical staff during my [hunger strike]," on April 1, 2020.  ECF No. 174 ¶ 141; *id.* ¶¶ 24-26.  But Plaintiff pleads that the medical staff was *already aware* of his hunger strike because he had informed them of the strike directly three days earlier.  *Id.* ¶¶ 13-15 (alleging that on March 29, 2020, he sent a written declaration of hunger strike to the "ADX's clinical director who's also the doctor, [and] the psychologist, Dr. Garber," among others); *id.* ¶ 26 (alleging that Santistevan said that the medical staff already knew about the hunger strike).  On March 30, 2020—before Santistevan's alleged failed referral—Plaintiff spoke directly with Dr. Garber, who had already seen the declaration.  *Id.* ¶ 17.  The same day, Lt. Gardino told Plaintiff that the "Doctor . . . received [Plaintiff's] written requests, and that everyone was already aware of [his] H. St. [hunger strike]."  *Id.*  Plaintiff also pleads that, on April 3, 2020, two other officers confirmed with Plaintiff "that they have contacted the medical, informed them of [Plaintiff] being on H. St. [hunger strike]" and that "the medical and the doctor were aware of my H. St., but it was up to the Dr. and the warden to authorize any medical assessment or treatment."

3

*Id.* ¶ 44.  Plaintiff did not place a sick-call request until April 3, 2020, when he also sent a "separate written [request] to the doctor."  *Id.* ¶¶ 43-46.  A nurse came to Plaintiff's cell five days later.  *Id.* ¶ 48.  These allegations, accepted as true, do not plausibly suggest that Santistevan's conduct delayed Plaintiff's initial medical assessment.

Additionally, even if Santistevan somehow delayed Plaintiff's assessment, Plaintiff fails to plead that any such *delay* caused him any injury, either factually or proximately, which is fatal to his negligence claim.  *Cf. Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (prisoner's failure to allege that a *delay* in medical treatment, as opposed to the injury-causing event itself, caused him permanent injury doomed a constitutional claim).  Even if Santistevan delayed Plaintiff's medical assessment by as much as 48 hours—from April 1 to April 3, *id.* ¶¶ 43-44—Plaintiff does not plead facts suggesting that his treatment, injuries, or recovery would have been any different if any medical encounters had occurred two days earlier.  Plaintiff alleges that, even when the medical staff did assess him, they did not offer affirmative medical treatment for his hunger-strike symptoms, *id.* ¶¶ 81, 100-01 & 118, and, afterwards, he still refused to eat.  *Id.* ¶¶ 68-69, 111 (alleging he refused to resume eating until April 18, 2020).  The medical team monitored Plaintiff but did not prescribe active treatment.  *See id.* ¶ 101 (alleging that Dr. Conroy told Plaintiff the medical treatment plan was to "leave you alone"); *id.* ¶ 93 (alleging that Plaintiff did not want to be force-fed).  Plaintiff thus fails to plausibly plead that Santistevan's alleged refusal to refer Plaintiff to the medical staff earlier caused or exacerbated his injuries.[2]  *See*

---

[2] To the extent Plaintiff implies that the ADX *medical staff* failed to appropriately treat the symptoms arising from his hunger strike, *see id.* ¶¶ 100-01, 113-15, 118, Plaintiff

*Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 621 (10th Cir. 1998) (plaintiffs "failed to state a claim for negligence" where they did not properly plead causation); *Serna v. Bureau of Land Mgmt.*, 614 F. App'x 384, 386 (10th Cir. 2015) (plaintiff failed to state a negligence claim in part because the complaint lacked "any showing as to how the defendants' alleged conduct caused him to suffer any damage").

Based on the facts alleged, Plaintiff's refusal to eat "appears predominant" in causing Plaintiff's alleged injuries, not the timing of Plaintiff's first medical assessment, which resulted in no affirmative treatment.  *Roland*, 2024 WL 372218, at *4 (quoting *Smith*, 749 P.2d at 464).  Therefore, Santistevan's alleged negligence cannot plausibly be a substantial factor causing Plaintiff any injury. *See id.*  Plaintiff fails to state a claim based on Santistevan's alleged failure to refer him to the medical staff.

## B. Claim 4B: No jurisdiction and no causation of injury

### 1. The FTCA does not waive sovereign immunity for claims arising from misrepresentation or deceit.

Claim 4B fails because the FTCA does not waive sovereign immunity for claims arising out of misrepresentation or deceit, and Plaintiff's claim about falsified food-intake records is such a claim.  The FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment.  *See Brownback v. King*, 592 U.S. 209, 212 (2021); 28 U.S.C. § 1346(b).

---

fails to plausibly allege that Santistevan's failure to *refer* him to medical was a proximate cause of any injuries resulting from any inadequate care.  Plaintiff does not plead what different treatment the ADX staff could have provided, aside from force-feeding him, which he declined.  *See id.* ¶ 93.  Indeed, according to Plaintiff, the hunger strike Program Statement requires the medical staff to evaluate and monitor a hunger-striking inmate but does not mandate any specific medical treatment.  *See id.* ¶ 19.

5

However, that waiver does not extend to "[a]ny claim arising out of . . . misrepresentation, [or] deceit . . . ."[3] 28 U.S.C. § 2680(h). The FTCA bars any claim "arising out of" misrepresentation or deceit, not merely direct claims for negligent or willful misrepresentation. *Id.*; *cf. United States v. Shearer*, 473 U.S. 52, 54-57 (1985) (explaining that a plaintiff "cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery" rather than directly asserting claims of assault and battery).

Plaintiff alleges that Santistevan falsely altered his food intake records. ECF No. 174 ¶¶ 28, 34, 40, 61, 69-70, 141. These allegations sound in either false representation or negligent misrepresentation causing physical harm, the most relevant torts under Colorado law. *See* Colo. Civ. Jury Instr. 19:1 (false representation); Colo. Civ. Jury Instr. 9:3 (negligent misrepresentation causing physical harm). Both claims "aris[e] out of" the underlying misrepresentation or deceit about Plaintiff's food intake. 28 U.S.C. § 2680(h). Because the United States is immune from such claims, the Court lacks jurisdiction and should dismiss Claim 4B.

## 2. Plaintiff fails to state a claim based on falsification of records.

Even if the Court had jurisdiction, Plaintiff's claim based on falsification of records fails for the same reason that his negligent-referral claim fails: he does not plausibly plead that the falsified food-intake records caused any injury. He pleads that,

---

[3] The FTCA does waive sovereign immunity for some torts listed in Section 2680(h) if those torts are committed by law enforcement officers. *See* 28 U.S.C. § 2680(h) (extending the waiver of sovereign immunity to "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" committed by law enforcement officers). But the FTCA does *not* waive sovereign immunity for claims arising from misrepresentation and deceit, even if committed by law enforcement officers. *Id.*

regardless of his food intake records, the medical staff was aware of his hunger strike from March 29, 2020, ECF No. 174 ¶¶ 13-14, 17, 43-44, and, even when the medical staff examined him, he did not receive medical treatment that would have affected the severity or duration of his symptoms from his refusal to eat, *id.* ¶¶ 51, 69, 81, 100-01, 111 & 118.  Therefore, Plaintiff fails to plausibly allege causation or injury resulting from the falsification of food-intake records, and his claim should be dismissed.

### C.   Claim 4C: No causation or injury

Finally, Plaintiff alleges that Santisteven was negligent in failing to remove food items from his cell after Plaintiff declared his hunger strike.  *Id.* ¶ 141.  But this claim (Claim 4C) fails, too, because he does not allege that the presence of food items caused any injury.  Plaintiff does not allege how his proximity to unused food items caused the physical or emotional injuries he enumerates, which are plausibly attributable to his choice not to eat for three weeks.  *See id.* ¶¶ 190-92 (listing injuries). He does not allege that he ate any of the items—he denies eating until April 18, 2020, *see id.* ¶ 111—or that doing so harmed him in any way.  He does not, and cannot, plausibly allege that any of his injuries would have been avoided or lessened if food items *had* been removed from his cell.  He fails to state a claim based on clearing his cell of commissary items.  Because none of the components of Plaintiff's Claim 4 is viable, the Court should dismiss Claim 4 in its entirety.

## II.   Plaintiff fails to state a claim for "negligent conduct" based on Santistevan's intentional excessive force (Claim 5).

Claim 5 asserts that Santistevan negligently used excessive force.  ECF No. 174 ¶¶ 144, 149, 154, 158, 162.  But the factual allegations of Claim 5 describe only an

intentional tort, not negligence.  Claim 5 describes the same battery that underlies Claims 6 and 7, which Defendants are not moving to dismiss.  Therefore, the Court should dismiss Plaintiff's negligence claim because it fails to plausibly plead negligence.

"To determine the nature of an asserted claim, [courts] focus not on the label the plaintiff uses, but on the conduct upon which he premises his claim as supported by the record." *Benavidez v. United States*, 177 F.3d 927, 931 (10th Cir. 1999); *Johnson v. Dep't of Veterans Affs.*, 351 F. App'x 288, 290 (10th Cir. 2009) ("To determine the nature of a claim, courts examine the substance of a plaintiff's allegations, not merely the labels applied to them.") (citing *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996)). Here, Plaintiff does not describe negligent acts by Santistevan.  Rather, he describes an intentional tort.

Plaintiff repeatedly alleges that Santistevan's excessive force was "wil[l]ful and wanto[n]."  ECF No. 174 ¶¶ 144, 149, 154-58, 162, 166-67, 172-73, 195-96.  He alleges that Santistevan "wilfully and wantoly [sic]" tightened his handcuffs excessively, *id.* ¶ 149, and "wilfully and wantoly jerked me up and lifted me up from behind through the excessively tightened chain around my waist." *Id.* ¶ 154.  He alleges that Santistevan consciously ignored his complaints about pain and intended to "punish[]" Plaintiff. *Id.* ¶¶ 151, 156, 162.  He alleges that Santistevan, with "wilful [sic] and wanton" motivation, threw him down on the medical exam table. *Id.* ¶ 158.  In substance, Plaintiff alleges that Santistevan committed an intentional battery. *See id.* ¶¶ 172-73.  Plaintiff cannot recast his intentional tort as a negligence claim without plausibly alleging facts of negligent conduct. *Cf. Garling v. U.S. Envt'l Protection Agency*, 849 F.3d 1289, 1298 (10th Cir. 2017) ("a plaintiff may not 'recast a negligence tort as an intentional tort to

take advantage of the law enforcement exception to § 2680(h)'" and rejecting the plaintiffs' "attempts to bring intentional tort claims without alleging intentional tort facts"); *see also Benavidez*, 177 F.3d at 931 ("a mere allegation of negligence does not turn an intentional tort into negligent conduct").

Because the substantive allegations of Claim 5 do not plausibly allege negligent conduct, but rather only an intentional tort, Claim 5 should be dismissed.

### III. Claim 8 should be dismissed.

In Claim 8, Plaintiff alleges that Defendant Medrano "failed to protect me and intervene from and to SANTISTEVEN's above alleged actions." ECF No. 174 ¶ 175. He alleges that Medrano, "as a staff member, was required to remove the food from my cell and refer me to the medical." *Id.* ¶ 176. Plaintiff also alleges that Medrano "fail[ed] to protect me and fail[ed] to intervene on my behalf" while "supervising the Medical Assessment" and escorts. *Id.* ¶ 177. Medrano did not "replace" Santistevan in the middle of the escort assignment. *Id.*

This is Plaintiff's failure-to-supervise claim by another name and fails for the same reasons that the Court dismissed that claim with prejudice from the Second Amended Complaint, ECF No. 123 at 23-26, and denied leave to amend the claim in the Third Amended Complaint, ECF No. 173 at 8-9; ECF No. 169 at 5-10.

#### A. No jurisdiction over Claim 8

##### 1. No waiver of sovereign immunity for falsification of food records

As with Claim 4, the United States has not waived sovereign immunity as to Claim 8, to the extent it is based on Medrano's failure to prevent the misrepresentation of his food-intake records, as explained above. *See supra*, Part I.B.1. Plaintiff alleges

9

that Medrano should have intervened to stop or correct the falsification of records.  *See* ECF No. 174 ¶ 176 ("however, [Medrano] agreed with SANTISTEVEN's falsification").  But this claim "arises out of" Santistevan's misrepresentations or deceit, because the alleged misrepresentation of food intake is the underlying wrong that Plaintiff says Medrano failed to correct.  Because the United States has not waived sovereign immunity for claims arising out of misrepresentation or deceit, this component of Claim 8 is barred by Section 2680(h).  *See Shearer*, 473 U.S. at 54-57 (claim for negligently failing to prevent an intentional tort was barred as "arising out of" the intentional tort excluded from the FTCA waiver of sovereign immunity).

### 2. Claim 8 is barred by the discretionary function exception.

Just as Plaintiff's prior negligent supervision claim against Medrano failed, *see* ECF No. 123 at 23-26, so, too, does his claim that Medrano should have intervened in his supervisory capacity: no mandatory source of law or policy dictated how Medrano was to intervene as these events unfolded, and decisions regarding intervention and reassignment of prison staff are susceptible to policy considerations.

In enacting the FTCA, Congress declined to waive sovereign immunity for acts or omissions "based upon the exercise or performance or the failure to exercise or perform a discretionary function[.]"  28 U.S.C. § 2680(a).  Claims within this exception are barred regardless of whether the conduct "was a matter of 'deliberate choice,' or a mere oversight," *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993); *see also Elder v. United States*, 312 F.3d 1172, 1184 (10th Cir. 2002).

A two-pronged test governs this exception.  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  First, courts consider whether the precise conduct at issue "was

10

'discretionary,' meaning whether it was 'a matter of judgment or choice . . . .'" *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008). "Conduct is not discretionary if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Id.* Under the second prong, the court asks whether the challenged decision is one requiring the exercise of judgment based on considerations of public policy. *See Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998). "In particular, discretionary decisions 'grounded in the social, economic, or political goals of the [governing] statute and regulations are protected.'" *Ball v. United States*, 967 F.3d 1072, 1076 (10th Cir. 2020). Plaintiff bears the burden of establishing that the discretionary function exception does not apply. *Id.* at 1079.

Plaintiff alleges that Medrano failed to protect him or intervene while he "was supervising the medical assessment." ECF No. 174 ¶ 177. Plaintiff alleges that Medrano "refused" to "replace" Santistevan during the medical escort and medical assessment. *Id.* These allegations raise the same discretionary choices and implicate the same policies regarding supervision and staffing of the prisons as the failure-to-supervise claim. *See* ECF No. 75 ¶ 217 (alleging the same basis for Plaintiff's negligent supervision claim); ECF No. 123 at 25-26 (order dismissing negligent supervision claim in Second Amended Complaint with prejudice); ECF No. 169 at 7-10 (recommending denying leave to amend negligent supervision claims).

Plaintiff fails to identify any source of law or policy that mandated how Medrano was to intervene during his supervision of Santistevan, let alone *when* Medrano must intervene. The policies Plaintiff cites in the Third Amended Complaint do not prescribe a specific and mandatory course of conduct Medrano was to take in the moment. *See*

ECF No. 167 at 5-7 (addressing the cited policies); ECF No. 169 at 7-10.  The decisions of how closely Medrano must micromanage his staff or how or when to step in to correct other officers' conduct, or when he must reassign correctional officers' duty assignments without advance notice, are discretionary decisions that "might be based on policy considerations," and implicate interests related to: (1) the disruption of daily prison operations due to staffing changes; (2) the effective allocation of limited staffing and supervisory resources; or (3) Medrano's own assessment of whether intervention would be safe for the inmate and staff.  ECF No. 123 at 24 (citing *Steele v. United States*, No. 09-cv-01557-CMA-CBS, 2010 WL 2501200, at *3 (D. Colo. June 15, 2010)); *see also Warren v. United States*, 244 F. Supp. 3d 1173, 1233-34 (D.N.M. 2017) (discretionary function exception barred prisoner's "failure to protect" claim); *Donaldson v. United States*, 281 F. App'x 75, 77-78 (3d Cir. 2008) (discretionary function applied to claim that the BOP ignored reports of threats of violence and failed to protect an inmate from another inmate).  The Court should dismiss Claim 8.

> **B.** **Plaintiff fails to state a claim based on the failure to remove food items from his cell or the failure to refer him to the medical staff.**

As explained above, Plaintiff fails to state claims for negligence related to the removal of food items from his cell or the failure to refer him to the medical staff sooner, because he does not plausibly plead that such inaction caused any injury.  *See supra*, Parts I.A & I.C.  It follows that the failure to *ensure* food removal or referral to the medical staff also must fail, because Plaintiff suffered no injury from the underlying presence of food items in his cell or Santistevan's alleged inaction after Plaintiff had informed the medical staff directly of his hunger strike.  Claim 8 should be dismissed to

the extent it is based on the failure to intervene related to food-item removal or the medical referral, for the same reasons that the underlying claims fail.

## IV.     Claim 10 should be dismissed.

In Claim 10, Plaintiff alleges that Warden True failed to protect him after he had written to the Warden requesting help.  ECF No. 174 ¶ 187.  Plaintiff alleges that he generally informed the Warden of Santistevan's and Medrano's "mistreatments towards me," and asserts that the Warden could have ensured that: (1) "the food items were removed from my cell"; (2) the "officer[s] correctly recorded my food intake"; (3) "the medical timely assessed me," and (4) the "alleged violence" stopped.  *Id.* ¶¶ 187-88.  Plaintiff alleges that he wrote the Warden three times.  First, he informed the Warden of the hunger strike on March 29, 2020, and prophylactically requested that the Warden "ensure my safety" because Plaintiff subjectively feared that he might be assaulted as he had been in 2018.  *Id.* ¶¶ 14-17.  Later, he informed the Warden that Santistevan "fabricat[ed]" food records and that Plaintiff feared a "*possible* second attack on me."  *Id.* ¶ 40 (emphasis added).  Finally, he reiterated the "food record fabrication" allegations and made another general request to "ensure my safety."  *Id.* ¶¶ 72-73.  Plaintiff does not allege that the Warden was present during his medical escort or assessment.

Claim 10 fails for the same reasons explained above:

• The Court lacks jurisdiction over the claim to the extent it arises out of misrepresentation or deceit, namely, the alleged fabrication of his food-intake records. *See* 28 U.S.C. § 2680(h); *Shearer*, 473 U.S. at 54-57; *see also supra*, Parts I.B.1 & III.A.1.

• Claim 10 is barred by the discretionary function exception, because no source

of law or policy prescribed a specific and mandatory course of action for the Warden's possible intervention in prison operations or reassignment of staff members.  The decision whether to intervene as a precaution or to override the decisions of the medical or correctional staff is susceptible to policy choices about staffing, daily operations of the prison, monitoring capabilities, and prison resources. *See supra*, Part III.A.2; *see also* ECF No. 123 at 23-26 (dismissing negligent supervision claim against Warden True with prejudice).

- Plaintiff fails to state a claim because he does not plausibly allege that the Warden's conduct caused any injury.  Plaintiff does not plead facts suggesting that he suffered an injury from the falsification of food-intake records or any delay in referring him to the medical team, because: (1) he alleges that he notified the medical staff of his hunger strike directly, at the same time he notified the Warden; (2) the medical team was aware of Plaintiff's hunger strike; (3) when the medical team assessed him, he did not receive medical treatment that would have prevented further injury from Plaintiff's refusal to eat; and (4) Plaintiff continued not to eat after he received medical attention. *See supra*, Parts I.A & I.B.2.  Plaintiff further does not allege that the failure to remove food items caused him any injury, as he does not allege that he consumed the items or that doing so resulted in harm.  *See supra*, Part I.C.  Plaintiff thus fails to plausibly plead that the Warden's action or inaction caused him any harm.

Claim 10 fails for a fourth reason: the Warden did not have a realistic opportunity to intervene to stop any alleged battery by Santistevan.  The pleading requirements of a failure-to-protect claim under Colorado law are not clear.  *See Martin v. United States*, No. 21-cv-02107-NYW, 2022 WL 2274706, at *12 (D. Colo. June 23, 2022).  But "in the

14

excessive force context under 42 U.S.C. § 1983, the Tenth Circuit has held that to hold a defendant liable based on a failure to intervene, the defendant 'must have had a realistic opportunity to intervene to prevent harm from occurring.'" *Id.* (quoting *Savannah v. Collins*, 547 F. App'x 874, 876 (10th Cir. 2013)).  An officer may be liable for a failure to intervene when the official observes or has reason to know that a "violation *is being committed* and fails to intercede."  *Mohamed v. Jones*, No. 20-cv-02516-RBJ-NYW, 2022 WL 523440, at *21 (D. Colo. Feb. 22, 2022) (emphasis added).

While the opportunity-to-intervene question may be one of fact in some cases, here, Plaintiff does not allege that the Warden was present during the medical escort or assessment on April 15, 2020—the only instance in which Santistevan allegedly used excessive force.  ECF No. 174 ¶ 145 (alleging that Medrano, Santistevan, a nurse, and other "C.O.'s" were present for the escort on April 15, 2020); *id.* ¶¶ 149, 154, 156, 158 & 162 (alleging that all the excessive force occurred during the medical escort and assessment on April 15, 2020).  Plaintiff does not plausibly allege that the Warden witnessed Santistevan's alleged battery or had reason to know that it was occurring.  Plaintiff's prior letters to the Warden, expressing vague fears or speculation about the *possible future* conduct of any number of officers, *see id.* ¶¶ 16, 38-40, 72-73, did not put the Warden on notice of a presently occurring or ongoing battery by Santistevan that the Warden needed to stop.  Plaintiff thus fails to state a claim based on the Warden's failure to intervene with respect to the alleged excessive force.

## CONCLUSION

The Court should dismiss Claims 4, 5, 8, and 10.

Respectfully submitted on July 25, 2024.

    MATTHEW T. KIRSCH
    Acting United States Attorney

    s/ Thomas A. Isler
    **Thomas A. Isler**
    Assistant United States Attorney
    1801 California Street, Ste. 1600
    Denver, CO 80202
    Telephone: (303) 454-0336
    E-mail: thomas.isler@usdoj.gov
    *Counsel for Defendant*

## CERTIFICATE OF SERVICE

    I hereby certify that on July 25, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and directed personnel in the United States Attorney's Office to serve the foregoing document and unpublished case law on the following non-CM/ECF participant by U.S. mail:

Khalfan Khamis Mohamed
#44623-054
United States Penitentiary - High
Inmate Mail/Parcels
P.O. Box 7000
Florence, CO 81226
Pro Se Plaintiff

    s/ Thomas A. Isler
    **Thomas A. Isler**