IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–02676–NYW–MDB

KHALFAN KHAMIS MOHAMED,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

### SUMMARY FOR *PRO SE* PLAINTIFF

The Court is recommending Claims 4, 5, 8, and 10 be dismissed. As to Claim 4, the allegations are not enough to show a causal link between Officer Santistevan's failure to refer you to medical, and the ultimate injury. Additionally, certain portions of Claim 4 arise out of misrepresentation or deceit, and even if they are not actual misrepresentation claims, they are still barred under the FTCA. As to Claim 5, the allegations support an intentional battery rather than a negligence claim, making Claim 5 duplicative of Claims 6 & 7. And finally, Claims 8 and 10 are a repackaging of claims already dismissed in this litigation. This is just a summary of the Court's Recommendation, which you should read in full.

### RECOMMENDATION

This matter is before the Court on Defendant's Partial Motion to Dismiss the Third Amended Complaint. (["Motion"], Doc. No. 177.) Plaintiff has responded to the Motion (["Response"], Doc. No. 185) to which Defendant has replied (["Reply"], Doc. No. 186). Based on the Court's review of the Motion, briefing, and relevant law, the Court respectfully **RECOMMENDS** Defendant's Motion be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff is a former inmate at the United States Penitentiary Administrative Maximum Facility ("ADX"), operated by the Bureau of Prisons ("BOP") in Florence, Colorado. (*See* Doc. No. 133 (advising the Court Plaintiff was transferred to United States Penitentiary Florence – High in October 2023).) In his Third Amended Complaint ["TAC"], Plaintiff alleges that in October and November 2019, "Officer Turner and her colleague ... repeatedly ... refused to allow" Plaintiff to make phone calls to his family, and Plaintiff therefore filed an administrative remedy ("AR") grievance with the BOP. (Doc.. No. 174 at ¶ 3.) Officer Turner allegedly retaliated by removing from the "approved phone list," the local numbers used by Plaintiff's mother and two siblings, who live in Tanzania. (*Id.* at ¶¶ 4–6; *id.* at ¶ 6 (explaining that the local calls through a Voice over Internet Protocol were significantly less expensive and that Plaintiff could not afford to make long distance calls).) Plaintiff alleges that because his AR grievances were "never" effective, he commenced a hunger strike on March 29, 2020. (*Id.* at ¶¶ 8–15; *see id.* at ¶¶ 14, 16 (saying Plaintiff "declared" the strike "in writing and verbally" such that "ADX and BOP authorities [were] fully aware of [the strike]" and so that he would be "provided with all medical attentions necessary [in] accordance with BOP's regulations").)

According to Plaintiff, applicable BOP regulations require that an inmate engaging in a hunger strike receive a medical assessment and monitoring after 72 hours or nine consecutive missed meals. (*Id.* at ¶ 19.) Plaintiff also says BOP regulations require staff to monitor and record "all food and water intake" by the hunger-striking inmate. (*Id.*) However, Plaintiff says staff disregarded and violated these regulations causing him "physical and mental sufferings and damages." (*Id.* at ¶ 21.) According to the TAC, Officer Santistevan[1] advised Plaintiff to "eat or die" and repeatedly falsified records of food consumption to delay medical care, despite Plaintiff's increasingly severe condition. (*Id.* at ¶¶ 26, 61, 84, 141; *see id.* at ¶ 28 (alleging that on one occasion, Officer Santistevan manipulated Plaintiff's food tray to give the appearance food had been consumed).) Plaintiff also alleges Officer Santistevan refused to refer him to the ADX doctor and made comments suggesting staff didn't care whether Plaintiff lived or died. (*Id.* at ¶¶ 25–26, 35, 38, 42, 141, 163, 164.) Additionally, Officer Santistevan allegedly refused to remove commissary food from Plaintiff's cell during the strike, in violation of BOP regulations. (*Id.* at ¶¶ 19, 36, 141.)

Plaintiff further alleges that on April 15, 2020, Officer Santistevan and a group of other officers applied restraints while escorting Plaintiff to medical, did so in a manner that caused Plaintiff "excruciating pain," and declined to adjust the restraints when Plaintiff protested. (*Id.* at ¶¶ 145–153.) Plaintiff says Officer Santistevan painfully "jerked" him and lifted him up by "excessively tightening [the] chain around [his] waist."(*Id.* at ¶ 154; *see id.* at ¶ 167 (alleging Plaintiff was left with a "deep cut" in his wrist from the excessively tight restraints).) Officer

---

[1] Plaintiff spells this officer's name "Santisteven," while Defendant spells his name "Santistevan." The Court will use Santistevan.

Santistevan allegedly told Plaintiff to "shut up" when he complained. (*Id.* at ¶ 155.) Plaintiff contends that upon reaching the medical unit, Officer Santistevan picked up Plaintiff and forcibly threw him down onto the bed, causing pain. (*Id.* at ¶ 158.) Plaintiff says the nurse called Officer Santistevan's actions "unnecessary." (*Id.* at ¶¶ 160.) Plaintiff alleges Officer Santistevan again used excessive force in later escorting Plaintiff back to his cell, threatened forced feedings, and said, among other things, "I like killing terrorists." (*Id.* at ¶¶ 162–64.)

Plaintiff also alleges Lt. Medrano observed and failed to intervene in connection with Officer Santistevan's wrongful conduct, including the food record falsification, the failure to remove commissary food from Plaintiff's cell, the failure to refer Plaintiff to medical staff, and Officer Santistevan's conduct while escorting Plaintiff to and from the medical unit on April 15, 2020. (*Id.* at ¶¶ 19, 29–36, 38–39, 153, 160, 174–79.) Likewise, Plaintiff alleges Warden True failed to take any action in spite of Plaintiff's complaints about Officer Santistevan and the alleged violations of BOP regulations. (*Id.* at ¶¶ 14, 40, 56–59, 72–73, 185–188.)

Plaintiff says that as a result of the ADX officers' conduct, he suffered extensively, including from abdomen pain, throat pain, bitterness in the mouth, loss of smell and taste, loss of control over urinating, painful swelling in extremities, passing blood, headache, unconsciousness, and shortness of breath. (*Id.* at ¶¶ 80, 112, 115–16.)

The TAC asserts six[2] claims for relief against the United States under the Federal Tort Claims Act ("FTCA"). (*See* Doc. No. 173 at 13.)

---

[2] Plaintiff's second amended complaint was partially dismissed by the court on September 23, 2023. (Doc. No. 123.) In response, Plaintiff filed a motion to amend the complaint, attaching a proposed third amended complaint that included ten claims for relief. (Doc. No. 159.) The court granted the motion in part, allowing Plaintiff to pursue Claims 4, 5, 6, 7, 8, and 10. (Doc. No. 173.)

- **Claim 4**[3]: "Negligent Conduct ... Based on Santistevan's Acts and Omissions in Relation to the Records of [Plaintiff's Hunger] Strike." (*Id.* at 20.)

- **Claim 5**: "Negligent Conduct ... Based on Santistevan's Acts or Omissions in Relation to His Use of Unnecessary Force." (*Id.* at 20–23.)

- **"Claims [6] & [7]"**: "Battery Claims ... Based on Santistevan's Use of Unnecessary Force While Restraining and Escorting [Plaintiff] to the M.R., Inside the M.R. and While Escorting [Plaintiff] Back to [his] Cell." (*Id.* at 24.)

- **Claim 8**: "Failure to Protect & to Intervene ... Based on Lt. Medrano['s] Acts and Omissions in Relation to Falsifying [Plaintiff's] Food Records and the Us[age] of Unnecessary Force" (*Id.* at 24–25.)

- **Claim 10**: "Failure to Protect and to Intervene ... Based on Warden True's Acts and Omissions."

(Doc. No. 174 at 20–27.)

Defendant moves to dismiss Claims 4, 5, 8, and 10. (Doc. No. 177.) Defendant argues certain parts of Claim 4 fail to state a claim for negligence (*id.* at 2–5, 7) and that the Court lacks jurisdiction over other parts because the FTCA does not waive sovereign immunity for claims arising out of misrepresentation or deceit, or, alternatively, that Plaintiff has failed to state a claim. (*Id.* at 5–7.) Defendant also argues Claim 5 fails to state a claim for negligence (*id.* at 7–9), and that the Court lacks jurisdiction over Claims 8 and 10 (*id.* at 9–12 13–14).

## LEGAL STANDARD

## I.    Federal Rule of Civil Procedure 12(b)(1)

---

[3] Claim 4 appears to state three different bases for finding Officer Santistevan acted negligently: 1) by failing to refer Plaintiff to medical staff during the hunger strike; 2) by misrepresenting Plaintiff's food intake on prison records; and 3) by failing to remove food items from Plaintiff's cell after he started the hunger strike.

Federal Rule of Civil Procedure Rule 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case but a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the complaint's allegations. *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n., Inc*., 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016). A challenge to subject matter jurisdiction may take one of two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56. *Id*. at 1003.

## II.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

6

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Iqbal evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," i.e., those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id.* at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).

## III.    *Pro Se* Plaintiff

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## ANALYSIS

Sovereign immunity shields the United States and its agencies from suit and deprives federal courts of jurisdiction to consider such claims. *San Juan Cty., Utah v. United States*, 754 F.3d 787, 792 (10th Cir. 2014). This is so unless "Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text." *Governor of Kansas v. Kempthorne*, 516 F.3d 833, 841 (10th Cir. 2008) (internal quotation marks omitted). The FTCA is one of those statutes and "provides a limited waiver of sovereign immunity" when the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" would establish liability for a private person under the

laws where the conduct occurred. *Ball v. United States*, 967 F.3d 1072, 1075 (10th Cir. 2020)

(citing 28 U.S.C. § 1346(b)). "State substantive law applies to suits brought against the United

States under the FTCA," which is Colorado law in this matter. *Hill v. SmithKline Beecham

Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004). "But the court must narrowly construe the FTCA's

waiver of sovereign immunity and must strictly adhere to the instances where the United States

has consented to suit without implying any exceptions." *DeWalt v. United States*, 2021 WL

4046416, at *3 (D. Colo. Mar. 10, 2021), *report and recommendation adopted*, 2021 WL

3629975 (D. Colo. Aug. 17, 2021) (citing *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir.

2006)).

    The FTCA provides several exceptions to its limited waiver of sovereign immunity,

including for intentional torts like assault, battery, malicious prosecution, abuse of process, libel,

slander, and misrepresentation, among others. 28 U.S.C. § 2680(a)-(n); *Garling v. United States

Envt'l. Prot. Agency*, 849 F.3d 1289, 1295 (10th Cir. 2017) (discussing the "intentional tort

exception"). Additionally, the "discretionary function" exception provides that the FTCA does

not waive immunity for claims based "upon the exercise or performance or the failure to exercise

or perform a discretionary function or duty...whether or not the discretion involved be

abused." 28 U.S.C. § 2680(a). "The Tenth Circuit has long held that courts lack subject matter

jurisdiction over an FTCA claim when the discretionary function exception applies." *Poletto v.

Sawyer*, 2023 WL 2401066, at *6 (D. Colo. Mar. 8, 2023), *report and recommendation adopted*,

2023 WL 11979854 (D. Colo. Mar. 28, 2023) (collecting cases).

    With this framework in mind, the Court first considers whether Plaintiff has sufficiently

alleged a "negligent or wrongful act or omission," that would establish liability for a private

person under Colorado law. *Ball*, 967 F.3d at 107. Under Colorado state law, "[t]o prevail on a negligence claim, a plaintiff must establish 'a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation, i.e., that the defendant's breach caused the plaintiff's injury.'" *Univ. of Denver v. Doe*, 547 P.3d 1129, 1145 (Colo. 2024) (quoting *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002)). "The test for causation is the 'but for' test—whether, but for the alleged negligence, the harm would not have occurred." *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987). "The requirement of but-for causation is satisfied "if the negligent conduct in a 'natural and continued sequence, unbroken by any efficient, intervening cause, produce[s] the result complained of, and without which that result would not have occurred.'" *Deines v. Atlas Energy Servs., LLC*, 484 P.3d 798, 801–02 (Colo. App. 2021) (quoting *Smith*, 749 P.2d at 464). "[F]or a plaintiff to prevail on causation, it is necessary to show that the negligence was a 'substantial factor' in producing the harm." *Smith*, 749 P.2d at 464.

I.    **Claim 4 – Officer Santistevan's Negligent Oversight of Plaintiff's Hunger Strike**

Plaintiff's negligence claim against Officer Santistevan is based on three acts or omissions. The Court will consider Defendant's challenge to each, in turn.

### A.  Santistevan's Alleged Failure to Refer Plaintiff to Medical Staff

Defendant seeks dismissal of this claim because Plaintiff does not allege that Officer Santistevan's failure to refer Plaintiff to medical staff, caused Plaintiff any injury. (Doc. No. 177 at 2–5.) According to Defendant, Plaintiff's own allegations demonstrate that ADX medical staff was aware of his hunger strike days prior to Officer Santistevan's alleged failure to act. In other words, because medical staff already knew about the strike, Officer Santistevan's failure to refer

Plaintiff to medical staff was inconsequential. (*Id*. at 3–4.) Alternatively, Defendant argues that even if Officer Santistevan's conduct caused a delay in medical treatment, the TAC still does not sufficiently allege causation because medical staff declined to prescribe any treatment. (*Id*. at 4–5.)

In response, Plaintiff explains his condition worsened with time, and notes that this strike was more detrimental than others, which were longer but met with greater medical care. (Doc. No. 185 at 1–2.) Plaintiff also argues that the "fact that other staff knew of [his] medical needs does not ... invalidate the claim based on failure to refer."[4] (*Id*. at 2.) These arguments do not save Plaintiff's claim.

The TAC makes clear that ADX medical staff was aware of Plaintiff's hunger strike from its inception. (*See, e.g.*, Doc. No. 174 at ¶ 17 (saying that on March 30, 2020, one day after Plaintiff's hunger strike began, the ADX psychologist advised Plaintiff "that the warden and the doctor" had each received his written requests declaring the strike and that "everyone was already aware of the [hunger strike]"). The TAC also suggests Officer Santistevan had no control over the timing of Plaintiff's medical care. (*Id*. at ¶ 44 (saying Plaintiff was told by other ADX officers that "medical [staff] and the doctor were aware of [the hunger strike] but it was up to the [doctor] and the warden to authorize any medical assessment").) In other words, because medical

---

[4] Plaintiff also appears to argue Claim 4 is not just based on Officer Santistevan's conduct but is also predicated on the conduct of "other staff" involved with his medical care. (Doc. No. 185 at 2.) However, the TAC specifically describes Claim 4 as "based on Santistevan's acts and omissions" during the hunger strike and does not refer to any other actor or otherwise attempt to plead a medical malpractice claim. (Doc. No. 175 at 20, ¶¶ 140–42.) Plaintiff may not amend the TAC through the Response and thus the Court declines to consider any other actions taken by any other individuals, when analyzing whether Claim 4 states a claim for relief. *See RV Horizons, Inc. v. Smith*, 2019 WL 1077366, at *12 (D. Colo. Mar. 7, 2019) ("[I]t is well-settled that Plaintiffs may not amend their operative pleading through a Response.").

staff was already aware of the strike, and it was medical staff—not Officer Santistevan—that was responsible for Plaintiff's medical care, there is no causal link between the failure to refer and the alleged injury. Moreover, and even assuming a referral by Officer Santistevan would have forced medical staff to examine Plaintiff sooner (which Plaintiff seems to assume, but does not square with his allegation that the doctor and warden were in charge of ordering medical care), the TAC does not sufficiently allege that an earlier examination would have made a difference. Indeed, the TAC specifically alleges the opposite—that initial examinations did <u>not</u> result in any proactive medical treatment. (*See id.* at ¶¶ 48–52 (saying Plaintiff's first encounter with medical staff during the hunger strike, on April 8, 2020, was to take his blood pressure, but the nurse "declined to medically assess" Plaintiff); *id.* at ¶¶ 77–81 (saying Plaintiff had his second encounter with medical staff on April 13, 2020, in which the nurse took his blood pressure and weight, as well as blood and urine samples, but declined to "do anything medically" to proactively address Plaintiff's condition).)

Finally, the Court notes that a hunger strike, in and of itself, puts one at grave risk for serious health problems. Plaintiff's conclusory allegations that he was healthier during past hunger strikes is not enough to show that a delay in care was a "substantial factor" in any injury that would be predominantly caused by the hunger strike itself. *See Roland v. Letgo, Inc.,* 2024 WL 372218, at *4 (10th Cir. Feb. 1, 2024) ("[I]f an event other than the defendants' negligence appears predominant, the defendants' negligence cannot be considered a substantial factor." (quoting *Smith*, 749 P.2d at 464)).

**B.  Officer Santistevan's Alleged Falsification of Plaintiff's Food Intake Records**

Defendant argues the Court lacks jurisdiction over Claim 4 to the extent it is predicated on Officer Santisevan's alleged falsification of Plaintiff's food intake records because the FTCA explicitly exempts claims "arising out of" "misrepresentation" or "deceit" from its waiver of sovereign immunity.[5] [6](Doc. No. 177 at 5–6.) In response, Plaintiff says he has no intent to bring a misrepresentation or deceit "claim," and thus, the Court should not consider Defendant's characterization. (Doc. No. 185 at 3.) He also argues that the TAC does not plead, nor attempt to plead, the elements of a misrepresentation claim. (*Id.* at 3–4.)

Plaintiff is correct that his allegations do not fit squarely within the elements of a classic misrepresentation claim. "The essence of an action for misrepresentation ... is the communication of misinformation on which the recipient relies." *Andrews v. United States*, 2009 WL 5210129, at *5 (D. Colo. Dec. 23, 2009) (citing *Block v. Neal,* 460 U.S. 289, n.5 (1983)). In other words, to state a claim for misrepresentation, a "plaintiff must allege 'reliance by the plaintiff ... upon the false information that has been provided,'" resulting in injury. *Andrews*, 2009 WL 5210129 at *5 (emphasis added) (quoting *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 854 (10th Cir. 2005).)

---

[5] "The Supreme Court has long held that based on the inclusion of both 'misrepresentation' and 'deceit,' the FTCA bars claims 'arising out of negligent, as well as willful, misrepresentation.'" *Abbey v. United States*, 112 F.4th 1141, 1145 (9th Cir. 2024) (quoting *United States v. Neustadt*, 366 U.S. 696, 702 (1961)).

[6] "In 1974, Congress carved out an exception to § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers." *Millbrook v. United States*, 569 U.S. 50, 53 (2013). This provision extends the waiver of sovereign immunity to "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" when such allegations relate to the "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). However, the proviso does not include claims arising out of misrepresentation or deceit. *Id.*

Here, however, Plaintiff does not allege he *personally* relied on misrepresentations or deceitful statements by the government, resulting in harm. Instead, he alleges the government made misrepresentations to *itself*—in the form of falsified food intake records—causing Plaintiff harm. But, the plain language of the relevant FTCA exception bars "[a]ny claim *arising out of* ... misrepresentation," not merely *claims for* misrepresentation. 28 U.S.C. § 2680(h) (emphasis added); *see Abbey v. United States*, 112 F.4th 1141, 1146 (9th Cir. 2024) ("[S]ection 2680(h) does not merely preclude claims for misrepresentation. Rather, it bars any claim 'arising out of' misrepresentation."); *Life Partners Inc. v. United States*, 650 F.3d 1026, 1032 (5th Cir. 2011) ("The FTCA's misrepresentation exception is broad: it bars any claim arising out of a misrepresentation—even if the conduct underlying the claim may also constitute a tort not barred by section 2680(h).") *see also United States v. Shearer*, 473 U.S. 52, 55 (1985) (plurality decision) ("Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." (emphasis in original)). So, in determining whether this claim is barred, the question is not whether Plaintiff's allegations make out a claim for misrepresentation, but whether the claim arises from misrepresentation.

In *Omegbu v. United States*, the Seventh Circuit found the misrepresentation exception triggered by the allegation that United States immigration officials "fraudulently plac[ed]" the criminal history of another person within the plaintiff's file. 475 F. App'x 628 (7th Cir. 2012); *see id.* at 629 (saying the misrepresentation "exception bars claims against the United States for the willful mishandling of records"). Similarly, in *Abbey*, the Ninth Circuit applied the misrepresentation exception when the complaint alleged the United States Navy made misrepresentations to the city of San Francisco about the safety of the contaminated shipyard

causing injury to the police officer plaintiffs who used the facility. 112 F.4th 1141; *id.* at 1143 ("[T]he plaintiffs' claims 'arise' out of the Navy's alleged misrepresentations, even if the Navy did not directly make them to the plaintiffs.").

Here, the claim clearly "arises out of" Officer Santistevan's alleged misrepresentation about Plaintiff's food intake. Indeed, misrepresentation and deceit are the crux of the allegations. *Abbey*, 112 F.4th at 1146 ("[A] claim is barred as 'arising out of' misrepresentation if its 'gravamen' or 'essence' is the government's communication of false information.). *Cf. Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 854–55 (10th Cir. 2005) ("[T]he misrepresentation exception does not bar suits on other grounds in cases in which misrepresentations are *collaterally involved*." (emphasis added)). Thus, the misrepresentation exception is triggered and the claim is barred.

Accordingly, the Court recommends Claim 4 be dismissed for lack of subject matter jurisdiction insofar as the claim is predicated on Officer Santistevan's alleged falsification of Plaintiff's food intake record.[7]

### C.  Santistevan's Alleged Failure to Remove Food Items From Plaintiff's Cell

---

[7] The Court also notes that even if it had found the misrepresentation exception did not apply, the Court would still recommend dismissal of this claim on Defendant's alternative ground: Plaintiff does not establish Santistevan's falsification of the food intake record caused him injury. Similar to the Court's analysis above, *see supra* at 10–12, it is undisputed that medical staff and the warden knew of Plaintiff's hunger strike from its inception, and thus, it does not follow that the contents of the food intake record impacted the actions of ADX medical staff or the warden in providing medical treatment. (*See, e.g.*, Doc. no. 174 at ¶ 57 (saying that on April 8, 2020—10 days into the hunger strike—Plaintiff overheard the warden during rounds asking an officer whether Plaintiff was still hunger striking, to which the unknown officer responded, "yes sir").) Moreover, even assuming the food intake record *did* delay the medical staff's first encounter with Plaintiff during the strike, there is no dispute that the first medical visit did not result in any substantive treatment. *See supra* at 11–12.

Defendant argues Claim 4 must also be dismissed to the extent it is based on Officer

Santistevan allegedly failing to remove commissary food items from Plaintiff's cell during the

hunger strike because the TAC fails to establish this caused Plaintiff injury. (Doc. No. 177 at 7.)

In response, Plaintiff says this alleged failure violated BOP regulations. (Doc. No. 185 at 4.)

The Court agrees with Defendant. While Officer Santistevan's alleged actions may

constitute a BOP policy violation,[8] the TAC does not tie the alleged violation to any injury. *See*

*Bullock v. Wayne*, 623 F. Supp. 2d 1247, 1252 (D. Colo. 2009), *as amended* (Apr. 17, 2009)

(saying that a negligence *per se* theory allows a plaintiff to establish the duty and breach

elements of a negligence claim by showing a violation of law, but noting that a plaintiff still must

show the violation "proximately caused the injury suffered" to establish a claim). Accordingly,

the Court recommends Claim 4 be dismissed insofar as the claim is predicated on Officer

Santistevan's failure to remove commissary food from Plaintiff's cell during the hunger strike.[9]

## II.    Claim 5 – Officer Santistevan's Negligent Use of Excessive Force

Defendant argues Claim 5 must be dismissed because the allegations make out a claim

for the *intentional* use of excessive force rather than negligence. (Doc. No. 177 at 7–9.)

Defendant also notes Plaintiff's claims for intentional battery against Officer Santistevan (Claims

6 & 7) are supported by the same allegations supporting Claim 5. (*Id.*) Plaintiff responds by

---

[8] The Court does not express a view on this assertion.

[9] At various points in his Response, Plaintiff objects to Claim 4 being split into three separate
claims rather than being considered as one single course of conduct giving rise to a single
negligence claim. (*See, e.g.*, Doc. No. 184 at 4.) However, this is an analytical distinction
without a difference. Plaintiff's allegations against Officer Santistevan—whether considered
jointly or separately—do not establish the alleged acts caused Plaintiff injury and thus do not
support a negligence claim.

arguing actions may be intentionally taken but nonetheless support a claim for negligence. (Doc.
No. 184 at 5–6.) He further points out that actions for "gross negligence" commonly include
allegations of "willful and wanton" conduct. (*Id.* at 6.)

As the Tenth Circuit has clearly stated, "[t]o determine the nature of a claim, courts
examine the substance of a plaintiff's allegations, not merely the labels applied to them."
*Johnson v. Dep't of Veterans Affs.*, 351 F. App'x 288, 290 (10th Cir. 2009) (*Weaver v. United
States,* 98 F.3d 518, 520 (10th Cir. 1996)). Here, though Plaintiff attempts to assert a negligence
claim in connection with the allegations of excessive force against Officer Santistevan, the
allegations clearly describe the intentional use of force. Namely, Plaintiff alleges Officer
Santistevan applied restraints in a manner that caused Plaintiff "excruciating pain"—and did not
adjust the restraints when Plaintiff protested—(Doc. No. 174 at ¶¶ 145–153), painfully "jerked"
Plaintiff and lifted him up by "excessively tightening [the] chain around [his] waist."(*Id.* at ¶
154), told Plaintiff to "shut up" when he complained (*id.* at ¶ 155), and forcibly threw Plaintiff
down on a bed in the medical unit (*id.* at ¶ 158). Such allegations are properly construed as a
claim for battery, which Plaintiff has alleged in Claims 6 & 7 (Doc. No. 174 at 24), and which
Defendant does not move to dismiss.

Moreover, though Plaintiff is correct that a claim for negligence can, and indeed usually
does, involve allegations of intentional conduct underlying the negligence, the defining feature of
a negligence claim is that the ultimate result—that is, the ultimate injury—is unintended. *See,
e.g.*, *McCabe v. United States*, 2012 WL 13076549, at *3 (D.N.M. Apr. 4, 2012) ("[T]he
fundamental distinction between assault and battery, on the one hand, and negligence, on the
other, is that the former is *intentional* and the latter is *unintentional*." (emphasis in original)

(quoting *Baska v. Scherzer*, 156 P.3d 617 (Kan. 2007)); *see also* Restatement (Second) of Torts §

8A, comment *b* (1965) ("All consequences which the actor desires to bring about are intended ....

Intent is not, however, limited to consequences which are desired. If the actor knows that the

consequences are certain, or substantially certain, to result from his act, and still goes ahead, he

is treated by the law as if he had in fact desired to produce the result."). Here, the TAC clearly

alleges Officer Santistevan intentionally used excessive force with the intent to cause Plaintiff

pain or while knowing his actions were substantially certain to cause Plaintiff pain. Plaintiff will

be able to pursue those allegations through the battery theory put forward in Claims 6 & 7. Thus,

the Court recommends Claim 5 be dismissed as it does not sound in negligence theory and is

duplicative of Claims 6 & 7.

### III.    Claims 8 and 10 – Lt. Medrano's and Warden True's Failure to Protect Plaintiff or Intervene in Officer Santistevan's Conduct

Defendant argues Plaintiff's failure to Intervene and Protect claims regarding Lt.

Medrano and Warden True are a repackaged version of Plaintiff's now-dismissed failure-to-

supervise claims. (Doc. No. 177 at 9.) Defendant further argues the Court lacks jurisdiction over

these claims under the discretionary function exception to the FTCA.[10] (*Id.* at 9–14.) Plaintiff

disputes the applicability of the discretionary function exception, arguing it does not apply

---

[10] Defendant brings other arguments, including that the intentional tort exception bars this claim insofar as it relates to Lt. Medrano and Warden True's failure to intervene in Officer Santistevan's alleged falsification of the food log and that Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6). But the Court finds it need not reach these arguments.

because Lt. Medrano and Warden True had a duty to protect Plaintiff "through the special relationship doctrine."[11] (Doc. No. 184 at 7–10.)

While the FTCA permits private rights of action for certain torts through a waiver of the United States's sovereign immunity, the "discretionary function exception removes from the waiver any 'claim ... based upon the exercise o[r] performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency.'" *Knezovich v. United States*, 82 F.4th 931, 936 (10th Cir. 2023) (quoting 28 U.S.C. § 2680(a)).

"In determining whether the discretionary function exception applies, courts apply a two-part test…: (1) whether there was a prescribed course of action; and (2) whether the action was of the kind that the discretionary function exception was designed to shield." *Poletto v. Sawyer*, 2023 WL 2401066, at *6 (D. Colo. Mar. 8, 2023) (citing *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)), *report and recommendation adopted*, 2023 WL 11979854 (D. Colo. Mar. 28, 2023). If the action might be based on policy considerations, then the second prong is met. *See Steele v. United States*, 2010 WL 2501200, at *3 (D. Colo. June 15, 2010) (citing *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008).

In support of these claims, Plaintiff alleges Lt. Medrano and Warden failed to intervene when Officer Santistevan 1) decided not to remove commissary food from Plaintiff's cell; 2) failed to refer Plaintiff to medical staff at the beginning of the hunger strike; and 3) falsified

---

[11] Plaintiff also cites certain appellate court decisions for the proposition Lt. Medrano had a duty to protect him. (*See* Doc. No. 184 at 8–9 (discussing *Farmer v. Brennan*, 511 U.S. 825 (1994); *Requena v. Roberts*, 893 F.3d 1195 (10th Cir. 2018)). However, these cases involved alleged constitutional violations and were brought under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971). The Court will not address this argument or the cited cases because they are inapplicable to this case. Plaintiff's claim is brought pursuant to the FTCA and does not assert a constitutional violation.

Plaintiff's food intake log. Plaintiff also alleges Lt. Medrano failed to intervene during Officer Santistevan's aggressive escort of Plaintiff to the medical unit.

The Court agrees with Defendant that these claims are a re-packaging of the same allegations that underpinned the Second Amended Complaint's failure-to-supervise claims regarding Lt. Medrano and Warden True. (*See* Doc. No. 123 at 23–26.) Those claims were dismissed under the discretionary function exception due to Plaintiff's failure to identify "policies or regulations that specifically dictate how Defendant Medrano or Defendant True were to supervise BOP staff. (*Id.*; *see also* Doc. No. 169 at 5–10; Doc. No. 173.)

Other than what was already rejected in prior orders, (*see* Doc. Nos. 123; 169; 173), Plaintiff does not cite any statute, regulation, or policy that specifically directs Lt. Medrano or Warden True as it concerns the supervision of their staff. Instead, Plaintiff argues Lt. Medrano and Warden True were governed by Colorado's "special relationship doctrine," and this required intervention. (Doc. No. 184 at 9–10 (collecting cases).) The argument is unpersuasive. While the BOP undoubtedly owes a general duty of care to its inmates, *see, e.g.*, 18 U.S.C. § 4042, it maintains discretion on how to fulfill that duty. To find that the special relationship doctrine overrides that discretion here, would be to find that the discretionary function exception cannot apply in the prison context at all, because the BOP has a special relationship with each of its inmates. That result would be illogical. *See, e.g.*, *Cuadrado-Concepcion v. United States*, 851 F. App'x 985, 989 (11th Cir. 2021) ("The special relationship theory of liability only serves to create a state-law duty to the plaintiff. But if the discharge of this state-law duty involves judgments grounded in considerations of public policy, the discretionary function exception bars

20

suit against the United States." (cleaned up)) Accordingly, the Court finds the discretionary

function exception bars Claims 8 and 10 and recommends their dismissal.[12]

## CONCLUSION

For the foregoing reasons the Court respectfully **RECOMMENDS** Defendant's Partial

Motion to Dismiss the Third Amended Complaint (Doc. No. 177) be **GRANTED** and Claims 4,

5, 8, and 10 be dismissed with prejudice.

The Clerk of Court is directed to mail a copy of this Recommendation to Plaintiff:

Khalfan Khamis Mohamed
#44623-054
FLORENCE HIGH
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 7000
FLORENCE, CO 81226

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

---

[12] The Court also notes that at least one court in this District—without applying the discretionary function exception—has rejected the notion that the special relationship doctrine provides for an FTCA claim grounded in allegedly improper oversight of an inmate's hunger strike. *See Susinka v. Trujillo*, 2023 WL 2366730, at *2–3 (D. Colo. Mar. 6, 2023) ("The Court finds that [the plaintiff] has failed to demonstrate that similar conduct by a private person would constitute negligence under Colorado law.").

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 18th day of February, 2025.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge