**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02676-NYW-MDB

KHALFAN KHAMIS MOHAMED,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

**ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Maritza Dominguez Braswell. [Doc. 187, issued February 18, 2025]. Judge Dominguez Braswell recommends that Defendant's Partial Motion to Dismiss Third Amended Complaint (or "Motion"), [Doc. 177], be granted, *see* [Doc. 187 at 21]. Plaintiff Khalfan Khamis Mohamed ("Plaintiff" or "Mr. Mohamed") has objected to the Recommendation ("Objection"), *see* [Doc. 189], and Defendant United States (or "the Government") has responded, *see* [Doc. 190]. For the reasons set forth below, Plaintiff's Objection is respectfully **OVERRULED** and the Recommendation is **ADOPTED**.

**LEGAL STANDARDS**

**I.      Rule 72(b)**

A district court may refer a dispositive motion to a magistrate judge for recommendation. 28 U.S.C. § 636(b)(1)(B). The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Such specific objections permit "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Id.* at 1059 (quotation omitted).

## II.    Rule 12(b)(1)

A party's assertion of sovereign immunity implicates the Court's subject matter jurisdiction.  *See Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1261 (10th Cir. 2018). Under Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (quotation omitted).  The burden of establishing jurisdiction rests with the party asserting jurisdiction.  *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).  Attacks on subject matter jurisdiction may take two different forms, a facial attack or a factual attack, each triggering a different analytical framework.  The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has explained that

> Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms.  First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint.  In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotations and citations omitted). Here, Defendant focuses only on the adequacy of the allegations in Plaintiff's complaint and submitted no other documents along with its motion. *See generally* [Doc. 177]. The Court therefore takes Plaintiff's factual allegations as true in deciding Defendant's jurisdictional arguments. *See Rodriguez-Aguirre*, 264 F.3d at 1203.

## III.    Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible" (quotation omitted)). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

IV.    **Pro Se Filings**

In applying the above principles, the Court is mindful that Mr. Mohamed proceeds pro se.  The Court thus affords his papers and filings a liberal construction.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).  But the Court cannot and does not act as a pro se litigant's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to pro se parties as to represented parties, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## BACKGROUND

Judge Dominguez Braswell sets out the background of this case in her Recommendation, *see* [Doc. 187 at 2–5], and the Court repeats it here only as necessary to resolve Plaintiff's Objection.  Plaintiff is a federal inmate who was incarcerated at the United States Penitentiary Administrative Maximum Facility ("ADX") in Florence, Colorado during the events relevant to this lawsuit.  [Doc. 174 at ¶¶ 1–2].  Plaintiff asserts claims based on prison officials' conduct in connection with his hunger strike in March and April of 2020.  [*Id.* at ¶ 1].[1]  He alleges that prison staff violated Bureau of Prisons ("BOP") regulations requiring them to refer an inmate on a hunger strike to medical staff and subject him to "close monitoring," including monitoring food and water intake.  [*Id.* at ¶¶ 19–21].  Plaintiff further alleges that Officer Santistevan, an ADX correctional officer, refused to refer Plaintiff to the ADX doctor and falsified reports of Plaintiff's food intake in

---

[1] The first two paragraphs of the Third Amended Complaint state that Plaintiff began his hunger strike on March 29, 2019, instead of March 29, 2020.  *See* [Doc. 174 at ¶¶ 1–2].  This is plainly a misprint by Plaintiff, as the remainder of the pleading refers to the start date as March 29, 2020 and makes clear that the relevant events occurred in 2020.  *See, e.g.*, [*id.* at ¶ 13, 17–18, 41, 48, 54, 108, 111].

order to delay medical care for Plaintiff. [*Id.* at ¶¶ 25–26, 28, 33, 61, 84, 141]. According to Plaintiff, Officer Santistevan also violated BOP regulations by refusing to remove commissary food items from Plaintiff's cell at the beginning of his hunger strike. [*Id.* at ¶¶ 19, 36, 141].

At one point during the hunger strike, on April 15, 2020, Officer Santistevan allegedly led other officers in "excessively tightening [Plaintiff's] restraints" before transporting Plaintiff to the medical unit in a manner that caused Plaintiff "excruciating pain." [*Id.* at ¶¶ 145, 148–49]. Officer Santistevan "jerked" Plaintiff up by his waist chain when walking him to the medical unit, told him to "shut up" when Plaintiff complained the restraints caused him pain, and slammed Plaintiff down on the bed in the medical unit. [*Id.* at ¶¶ 154–59].

Plaintiff alleges that Officer Santistevan's superiors, Lieutenant Medrano and Warden True, were aware of Plaintiff's complaints about Officer Santistevan but failed to adequately supervise him or otherwise intervene in his conduct. [*Id.* at ¶¶ 14, 19, 38–40, 56–59, 72–73, 185–88]. Plaintiff further alleges that Lieutenant Medrano observed Officer Santistevan's alleged violations of BOP policy and use of excessive force but did not stop him. [*Id.* at ¶¶ 19, 29–36, 153, 160, 174–79].

Plaintiff's Third Amended Complaint asserts six claims, which the Court refers to based on the numbers used by Plaintiff:

- A negligence claim based on Officer Santistevan's conduct during Plaintiff's hunger strike ("Claim Four"), [*id.* at ¶¶ 140–42];

- A negligence claim based on Officer Santistevan's "use of unnecessary force" during Plaintiff's transport to and from the medical unit ("Claim Five"), [*id.* at ¶¶ 143–69];

- Battery claims based on Officer Santistevan's "use of unnecessary force" during Plaintiff's transport to and from the medical unit ("Claims Six and Seven"), [*id.* at ¶¶ 171–73];

- Lieutenant Medrano's "failure to protect [Plaintiff] and to intervene" in Officer Santistevan's alleged wrongful conduct ("Claim Eight"), [*id.* at ¶¶ 174–79];

- Lieutenant Medrano's negligent supervision of Officer Santistevan during Plaintiff's transport to and from the medical unit and during the application of restraints to Plaintiff prior to transport ("Claim Nine"), [*id.* at ¶¶ 180–84]; and

- Warden True's "failure to protect [Plaintiff] and to intervene" on Plaintiff's behalf ("Claim Ten"), [*id.* at ¶¶ 185–88].

The Government seeks, and Judge Dominguez Braswell recommends, dismissal of Claims Four, Five, Eight, and Ten. [Doc. 177 at 1; Doc. 187 at 21]. Claims Six and Seven and Claim Nine are not at issue. The Court considers Plaintiff's Objection below.

## ANALYSIS

### I.    The FTCA

The United States is generally immune from suit pursuant to the doctrine of sovereign immunity, which precludes federal jurisdiction. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). But "[t]hrough 28 U.S.C. § 1346(b)(1), the FTCA waives sovereign immunity for certain state

law tort claims against the United States." *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017). More specifically, the FTCA waives sovereign immunity "with respect to certain injuries caused by government employees acting within the scope of their employment." *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997). The FTCA provides that the United States may be sued for damages for injuries

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the *law of the place where the act or omission occurred.*

28 U.S.C. § 1346(b)(1) (emphasis added). "Put another way, the FTCA incorporates the substantive law of the state where the tortious act or omission occurred." *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013) (quotation omitted); *accord Garling*, 849 F.3d at 1294 ("State substantive law applies to suits brought against the United States under the FTCA." (quotation omitted)). Here, all relevant acts or omissions occurred in Colorado. *See* [Doc. 174 at ¶ 1]. The Court accordingly applies Colorado law to Plaintiff's tort claims in determining whether Plaintiff has adequately pled claims that fall within the FTCA's waiver of sovereign immunity.

## II. Claim Four

Claim Four asserts a negligence claim based on Officer Santistevan's oversight of Plaintiff's hunger strike. *See* [*Id.* at ¶¶ 140–42]. Specifically, Plaintiff alleges that Officer Santistevan failed to refer him to medical staff, fabricated his food intake records, and violated BOP regulations by failing to remove Plaintiff's commissary food from his cell. [*Id.* at ¶¶ 19, 25–26, 28, 64, 68–70]. Judge Dominguez Braswell recommends dismissal of Claim Four because Plaintiff fails to plausibly allege that any of these acts caused his

injuries. [Doc. 187 at 10–16]. The Court briefly sets out the law regarding the causation element of negligence before turning to Plaintiff's Objection.

Under Colorado law, "[t]o establish a prima facie case for negligence, a plaintiff must show that the defendant owed a legal duty of care to the plaintiff, the defendant breached that duty, the plaintiff suffered injury, and the defendant's breach caused the plaintiff's injury." *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002). The causation element is determined using the "but for" test—a plaintiff must allege that "but for the alleged negligence, the harm would not have occurred." *Deines v. Atlas Energy Servs. LLC*, 484 P.3d 798, 801 (Colo. App. 2021). "The requirement of 'but for' causation is satisfied if the negligent conduct in a natural and continued sequence, unbroken by any efficient, intervening cause, produces the result complained of, and without which the result would not have occurred." *N. Colo. Med. Ctr. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996) (quotation and brackets omitted).

To establish causation, a plaintiff must also "show that the negligence was a 'substantial factor' in producing the harm." *Id.* (quotation omitted). "If an event other than the defendant's alleged conduct appears predominant, the defendant's conduct cannot be a substantial factor." *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1228 (D. Colo. 2015) (citing *N. Colo. Med. Ctr.*, 914 P.2d at 908). When events or acts other than the defendant's conduct combine to cause a harm, one of those other events "may have such a predominant effect in bringing . . . about [the harm] as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor." *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987) (quoting Restatement (Second) of Torts § 433 cmt. d (Am. L. Inst. 1965)). Similarly, even if "no

one of the contributing factors may have such a predominant effect, their combined effect may . . . so dilute the effects of the actor's negligence as to prevent it from being a substantial factor." *Id.*

### A.    Failure to Refer Plaintiff to Medical Staff

Judge Dominguez Braswell finds that Plaintiff cannot sustain a negligence claim on Officer Santistevan's alleged failure to refer because Plaintiff does not sufficiently allege a causal link between the conduct and Plaintiff's injuries.  [*Id.* at 11–12].  Judge Dominguez Braswell points out that, as alleged, Officer Santistevan could not control "the timing of Plaintiff's medical care."  [*Id.* at 11 (citing [Doc. 174 at ¶ 44])].  The medical staff were aware of Plaintiff's hunger strike from the beginning, and the ADX doctor and warden, not Officer Santistevan, had the final say on whether Plaintiff received medical attention.  [*Id.* at 11–12 (citing [Doc. 174 at ¶ 17, 44])].  Nor does Plaintiff allege that an earlier or additional medical assessment would have prevented or mitigated his injuries. [*Id.* at 12 (observing that Plaintiff alleges medical staff declined to treat Plaintiff during his first two medical encounters during the strike (citing [Doc. 174 at ¶¶ 48–52, 77–81]))].

Plaintiff objects on the basis that a medical referral from Officer Santistevan would have increased his odds of receiving a visit from the medical staff.  [Doc. 189 at 1–2]. Because Officer Santistevan was "the responsible officer in the unit," medical staff "relies on him first and foremost" rather than Plaintiff's "own submitted written requests."  [*Id.* at 1].  Plaintiff explains that medical staff usually "ignore prisoners' self-reporting [medical requests], but rarely do so with staff's, especially when such reporting comes from an experienced and a high level staff like [Officer Santistevan]."  [*Id.*].

As an initial matter, Plaintiff's statement that medical staff rely on other officers to refer prisoners for medical attention appears to be a new factual allegation asserted for the first time in the Objection. The Court cannot take this allegation as true in ruling on the Recommendation and Objection. *See, e.g.*, *Braun v. United States*, No. 1:22-cv-00108-RJS-CMR, 2023 WL 6158943, at *5 (D. Utah Sept. 21, 2023). Even crediting this allegation, however, Plaintiff still fails to establish that "but for" Officer Santistevan's refusal to refer him to medical staff, Plaintiff's injuries would have been prevented.

The Court respectfully concurs with Judge Dominguez Braswell that, according to Plaintiff's allegations, Officer Santistevan could not control Plaintiff's medical care. Despite Officer Santistevan's alleged failure to refer, medical staff still visited Plaintiff twice during his hunger strike. [Doc. 174 at ¶¶ 48–52, 77–81]. Both times, they declined to treat Plaintiff. [*Id.*]. And as Judge Dominguez Braswell emphasizes, Plaintiff alleges that the ADX warden and doctor—the only officials who could "authorize any medical assessment or treatment"—were aware of Plaintiff's hunger strike and its physical effects on him, yet did not order medical intervention. *See* [*id.* at ¶¶ 44, 51, 57–58]; *see also* [*id.* at ¶¶ 76–81, 85 (alleging that, one day after Plaintiff vomited blood, a BOP officer told Plaintiff that the warden and doctor knew about Plaintiff's condition and "were not concerned" for his health)]. In light of these other officials' conduct, Plaintiff's argument that a referral from Officer Santistevan would have led to a different result is merely speculative. *See Reigel v. SavaSeniorCare, L.L.C.*, 292 P.3d 977, 988 (Colo. App. 2011) ("[T]he plaintiff must establish causation beyond mere possibility or speculation." (quoting *Nelson v. Hammon*, 802 P.2d 452, 457 (Colo. 1990))).

The Court also agrees that Plaintiff has not plausibly alleged that Officer Santistevan's failure to refer was a substantial factor in his injuries. Judge Dominguez Braswell observes that "a hunger strike, in and of itself, puts one at grave risk for serious health problems." [Doc. 187 at n.12]. Plaintiff's injuries ultimately arise from his decision to begin and continue a hunger strike. His allegations suggest that he continued to receive his usual meal "trays," even if he chose not to eat from them. *See, e.g.*, [Doc. 174 at ¶ 61]. Plaintiff objects that he "never went into hunger strike for self harm." [Doc. 189 at 2]. But motive is irrelevant to the substantial factor analysis. Instead, courts focus only on whether an injured party's conduct, or any other acts or events, played enough of a role in causing the injury that the defendant's conduct was not a substantial factor. *See Smith*, 749 P.2d at 464 (finding that failure to timely approve decedent's alcoholism rehabilitation plan was not a substantial factor in decedent's death in motorcycle crash when he operated the motorcycle while intoxicated and wearing a knee brace that affected his ability to drive). Between Plaintiff's voluntary conduct and the more immediate roles of the ADX warden, doctor, and medical staff in delaying medical attention to Plaintiff, the Court concludes that Plaintiff fails to plausibly allege that Officer Santistevan's failure to refer him to medical staff was a substantial factor in his injuries.

### B.     Falsification of Food Intake Records

Judge Dominguez Braswell recommends dismissal of Claim Four for two reasons insofar as the claim is predicated on Officer Santistevan's alleged falsification of Plaintiff's intake. [Doc. 187 at 12–15& n.7]. For one, she recommends dismissal based on Plaintiff's failure to adequately allege that Officer Santistevan's falsification of his food intake records caused him harm. [*Id.* at 15 n.7]. Plaintiff offers only a conclusory objection

to this finding, [Doc. 189 at 3], which the Court liberally construes as incorporating his causation arguments with respect to Officer Santistevan's alleged failure to refer him to medical staff. For the same reasons set forth above, the Court finds that Plaintiff does not plausibly allege causation. Based on Plaintiff's allegations that other officials with more control over Plaintiff's medical care were aware of Plaintiff's hunger strike, Plaintiff fails to adequately allege that Officer Santistevan's falsification of his food intake records was a "but for" cause of Plaintiff's injuries. Nor was the alleged falsification a substantial factor in the injuries in light of other officials' conduct and Plaintiff's own role in continuing the hunger strike as he experienced negative health effects. *See supra* Part II.A. For this reason alone, this portion of Claim Four fails to state a claim. Nevertheless, the Court additionally considers the recommendation and objection regarding the FTCA's misrepresentation exception.

Judge Dominguez Braswell further recommends dismissal of Claim Four to the extent it asserts a claim for Officer Santistevan's alleged falsification of food intake records, because she concludes that the claim falls within the FTCA's misrepresentation exception. [Doc. 187 at 13–15]. Plaintiff objects that he has pled a claim for negligence, not misrepresentation, and the relevant allegations do not meet the elements of a misrepresentation claim. [Doc. 189 at 3].

As Judge Dominguez Braswell observes, however, the FTCA preserves sovereign immunity for claims "'arising out of . . . misrepresentation." 28 U.S.C. § 2680(h); [Doc. 187 at 14]. A claim may "arise" from misrepresentations even if it is not expressly a misrepresentation claim. [Doc. 187 at 14 (collecting cases)]; *see also, e.g., Abbey v. United States*, 112 F.4th 1141, 1146 (9th Cir. 2024) ("[B]y its plain text, section 2680(h)

does not merely preclude claims for misrepresentation.  Rather, it bars any claim 'arising

out of' misrepresentation.").  Even construing Plaintiff's Objection liberally, he focuses

only on the fact that Claim Four is not pled as a misrepresentation claim.  [Doc. 187 at

14–15].  Plaintiff does not dispute Judge Dominguez Braswell's finding that a claim may

"arise out of" misrepresentations the government makes to itself.  [Doc. 187 at 14–15;

Doc. 189 at 3].  And because the Court agrees with Judge Dominguez Braswell that

Officer Santistevan's alleged falsification of food intake records is the "crux" of this aspect

of Claim Four, *see* [Doc. 187 at 15 (citing *Abbey*, 112 F.4th at 1146)], the Court concludes

that any claim based on those falsifications arises out of misrepresentations, *see Omegbu*

*v. United States*, 475 F. App'x 628, 629 (7th Cir. 2012) ("Because Omegbu alleged that

federal officials deliberately falsified information in his file, his fraud claim is precisely the

kind barred by the FTCA's exception for misrepresentation and deceit.").  Accordingly,

the Court concurs with Judge Dominguez Braswell that Claim Four is barred by the

FTCA's misrepresentation exception insofar as the claim is predicated on Officer

Santistevan's alleged misrepresentations.

### C.    Failure to Remove Food Items from Plaintiff's Cell

The final relevant conduct alleged in Claim Four is Officer Santistevan's failure to

remove food items from Plaintiff's cell after the hunger strike began.  [Doc. 174 at ¶¶ 19,

64, 141].  Regardless of whether Officer Santistevan's alleged conduct violates BOP

policy, Judge Dominguez Braswell finds that Plaintiff cannot establish causation because

he "does not tie the alleged violation to any injury."  [Doc. 187 at 16].  Plaintiff objects that

the failure to remove food items must have caused the delay in medical treatment and his

associated injuries, because "medical staff failed to perform the medical assessment

[during] the period in which [Officer] Santistevan refused to remove the food items." [Doc. 189 at 3]. Plaintiff emphasizes that other BOP staff removed his food items in the evening of April 9, 2020, exactly nine meal trays before he received a medical assessment on the morning of April 13. [Doc. 189 at 3].

The facts cited by Plaintiff demonstrate that the lack of medical attention was correlated to, not caused by, Officer Santistevan's failure to remove food items from Plaintiff's cell. Nowhere in his Third Amended Complaint does Plaintiff allege that removal of commissary food items is a prerequisite to a medical assessment, let alone that medical staff need to wait nine meal trays after removal to perform a medical assessment. The Objection's version of the "nine trays" requirement appears to derive from the allegation that BOP policy considers a prisoner to be on hunger strike "upon missing 9 consecutive [meal] trays," at which point staff are allegedly required to take various actions, including removing food items from the prisoner's cell. *See* [Doc. 174 at ¶ 19]. As alleged, that policy does not support Plaintiff's assumption that medical staff must wait for food items to be removed before evaluating an inmate. More importantly, the Third Amended Complaint already explains that Plaintiff received a medical assessment on the morning of April 13 because he vomited blood. [*Id.* at ¶¶ 76–77]. Plaintiff's factual allegations do not state or imply that the April 13 medical assessment was in any way prompted by the belated removal of food items from his cell. And for the reasons explained above, Plaintiff has not adequately alleged that Officer Santistevan's conduct was a but-for cause of or substantial factor in Plaintiff's injuries in light of Plaintiff's role in refusing to eat and the ADX medical staff's, doctor's, and warden's respective roles in determining whether Plaintiff received medical attention. *See supra* Part II.A.

In sum, the Court finds that Plaintiff fails to plausibly allege that Officer Santistevan's acts operated in a "natural and continued sequence" to produce Plaintiff's injuries. *See N. Colo. Med. Ctr.*, 914 P.2d at 908. Plaintiff protests that Claim Four has been improperly split into different parts, [Doc. 189 at 3], but the Court only analyzes Officer Santistevan's alleged acts separately for clarity. Plaintiff does not explain how combining Officer Santistevan's acts into a single analysis would reveal a sufficient allegation that "but for" the acts, Plaintiff would not have been injured. The Court therefore **OVERRULES** the Objection and **ADOPTS** the Recommendation that Claim Four be dismissed with prejudice.[2]

## III.    Claim Five

Judge Dominguez Braswell recommends that Claim Five be dismissed because the claim sounds in battery, not negligence, and should be dismissed as duplicative of Plaintiff's battery claims. [Doc. 187 at 16–18]. Judge Dominguez Braswell notes that Claim Five's allegations of "negligence" all involve the intentional application of excessive force. [*Id.* at 17]. Plaintiff objects that a negligence claim may arise from "intentional acts

---

[2] Dismissal with prejudice is appropriate when it is clear the plaintiff cannot plead a plausible claim for relief and thus amendment would be futile. *See Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014); *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (explaining that dismissal without prejudice is appropriate where plaintiff is "close to stating a claim but [is] missing some important element that may not have occurred to him" (quotation omitted)). Dismissal with prejudice may also be appropriate where a plaintiff "has failed to cure pleading deficiencies despite multiple opportunities to amend." *See Harvey v. Martinez*, No. 22-cv-00369-NYW-TPO, 2024 WL 5086080, at *4 n.5 (D. Colo. Dec. 12, 2024) (collecting cases). Here, no additional allegations of Officer Santistevan's conduct will alter the fact that the ADX medical staff, doctor, and warden, in addition to Plaintiff himself, all played greater roles in Plaintiff's injuries than Officer Santistevan. And because Plaintiff has failed to cure this deficiency despite filing four iterations of his complaint, *see* [Doc. 1; Doc. 36; Doc. 75; Doc. 174], the Court finds that further amendment of Claim Four would be futile. Dismissal with prejudice is therefore appropriate.

or omissions." [Doc. 189 at 4]. He alternatively argues that the Court should construe Claim Five as one for "gross negligence." [*Id.* at 5].

"Duplicative claims may be dismissed pursuant to Rule 12(b)(6) or may be stricken pursuant to Rule 12(f) as 'redundant, immaterial, impertinent, or scandalous' for the sake of judicial efficiency." *Hallum v. Four Corners OB-GYN*, No. 17-cv-00007-MV-SCY, 2019 WL 1242237, at *6 (D.N.M. Mar. 18, 2019). "Claims are duplicative when they are substantially the same as other claims in the suit." *Id.* (quotation omitted). "To determine the nature of a claim, courts examine the substance of a plaintiff's allegations, not merely the labels applied to them." *Johnson v. Dep't of Veterans Affs.*, 351 F. App'x 288, 290 (10th Cir. 2009). "[A] mere allegation of negligence does not turn an intentional tort into negligent conduct." *Benavidez v. United States*, 177 F.3d 927, 931 (10th Cir. 1999) (noting that the focus is "not on the label the plaintiff uses, but on the conduct upon which he premises his claim as supported by the record").

Plaintiff argues that he may bring a negligence claim based on "intentional acts or omissions" without the claim arising out of battery. [Doc. 189 at 4]. Negligence claims can and do involve intentional acts. But this misses the distinction drawn by Judge Dominguez Braswell that, unlike battery, the "defining feature of a negligence claim is that the ultimate result—that is, the ultimate injury—is unintended." [Doc. 187 at 17 (citations omitted)]. Under Colorado law, a battery claim requires that "the actor desired to cause offensive or harmful consequences" through contact with the plaintiff. *White v. Muniz*, 999 P.2d 814, 816, 819 (Colo. 2000). Negligence, on the other hand, "consists of a failure to exercise reasonable care in order to protect others from harm." *United Blood Servs. v. Quintana*, 827 P.2d 509, 523 (Colo. 1992); *see also Victor Coal Co. v. Muir*, 38 P. 378,

16

385 (Colo. 1894) ("'[N]egligence' means 'inadvertence' or 'carelessness.'").   In other words, if the "substance" of Claim Five involves an intentionally harmful contact to Plaintiff, the claim sounds in battery.

Turning to Plaintiff's factual allegations, the Court agrees with Judge Dominguez Braswell that the substance of Claim Five is a claim for battery.  Claim Five arises from allegations that Officer Santistevan "excessively" tightened Plaintiff's restraints in an act of "brutality," causing "excruciating pain."   [Doc. 174 at ¶¶ 148–50].   When Plaintiff protested that the restraints were too tight, Officer Santistevan told him to "shut up" in a "threatening [tone]," then "jerked" Plaintiff up by his waist chain before "aggressively lift[ing]" Plaintiff up and "forc[e]fully [throwing]" him down on a bed in the medical unit.  [*Id.* at ¶¶ 151–58].  Officer Santistevan also told Plaintiff, "I told you, [we] weren't gonna make it easy for you."  [*Id.* at ¶ 156].  Plaintiff alleges that Officer Santistevan used the tightened restraints as a "method of punishing [him]."   [*Id.* at ¶ 162].   These allegations plainly demonstrate that Claim Five turns on Officer Santistevan's intentional harmful contact with Plaintiff, as opposed to mere carelessness.

Plaintiff's alternative argument, that the Court should construe his claim as one for gross negligence, cannot sidestep the fundamental distinction between negligence and battery.   Plaintiff has carefully used the words "willful and wanton," rather than "intentional," to describe Officer Santistevan's use of force.   *See* [Doc. 174 at ¶¶ 154–158].  But the underlying factual allegations describe an intentional harmful contact—the hallmark of battery, *Muniz*, 999 P.2d at 816—whereas gross negligence "describe[s] conduct that is more than negligent and less than intentional," *Pfantz v. Kmart Corp.*, 85 P.3d 564, 568 (Colo. App. 2003); *see also White v. Hansen*, 837 P.2d 1229, 1233 (Colo.

1992) (en banc) (reiterating that a gross negligence claim "is not the equivalent of an allegation of willful or intentional injury").  Aside from the labels used to characterize Officer Santistevan's conduct, Plaintiff does not dispute Judge Dominguez Braswell's conclusion that the "substance" of Claim Five remains an allegation of intentional force against Plaintiff.  As Judge Dominguez Braswell observes, Plaintiff's battery claims rely on the same factual allegations as Claim Five.  [Doc. 187 at 18]; *see also* [Doc. 174 at ¶¶ 171–73 (incorporating [*id.* at ¶¶ 143–70])].  Based on these allegations, the Court concludes the substance of Claim Five is substantially the same as Plaintiff's battery claims.  *See Hallum*, 2019 WL 1242237, at *6.

Because Claim Five alleges intentional harmful contact rather than negligence, the claim fails to plausibly allege negligence and is duplicative of Plaintiff's battery claims. The Court respectfully **OVERRULES** Plaintiff's Objection with respect to Claim Five and **ADOPTS** the Recommendation that Claim Five be **DISMISSED with prejudice**.

## IV.    Claims Eight and Ten

Claims Eight and Ten allege that Lieutenant Medrano and Warden True failed to intervene when Officer Santistevan violated BOP regulations by failing to remove Plaintiff's commissary food from his cell, failing to refer Plaintiff to medical staff at the beginning of his hunger strike, and by falsifying Plaintiff's food intake records.  [Doc. 174 at ¶¶ 174–79, 185–88].  Plaintiff also alleges Lieutenant Medrano failed to intervene when Officer Santistevan used excessive force against him.  [*Id.* at ¶ 177].  These claims repackage Plaintiff's previously dismissed failure-to-supervise claims.  *See* [Doc. 187 at 20; Doc. 123 at 23–26].  Where Plaintiff previously alleged that Lieutenant Medrano and Warden True failed to appropriately supervise Officer Santistevan, [Doc. 75 at ¶¶ 217–

18], he now alleges that these officers failed to intervene in their subordinate's alleged misconduct, [Doc. 174 at ¶¶ 174–79, 185–88]; *see also* [Doc. 189 at 5 (describing Claims Eight and Ten as "failure to protect and to intervene").   Given that this Court found the FTCA's discretionary function exception bars Plaintiff's failure-to-supervise claims, [Doc. 123 at 23–26], Judge Dominguez Braswell recommends that the failure-to-intervene claims in Claims Eight and Ten be dismissed pursuant to the discretionary function exception as well, [Doc. 187 at 20–21].

The discretionary function exception retains sovereign immunity against tort claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty."   28 U.S.C. § 2680(a).   The discretionary function applies if both parts of a two-pronged test are satisfied.   *Ohlsen v. United States*, 998 F.3d 1143, 1160–61 (10th Cir. 2021) (citing *Berkovitz v. United States*, 486 U.S. 531 (1988)).   First, courts "consider 'whether the action is a matter of choice for the acting employee.'"   *Id.* (quoting *Berkovitz*, 486 U.S. at 536).   An employee has no choice "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536.   Second, if the action was a matter of choice, courts ask "whether that judgment is of the kind that the discretionary function exception was designed to shield."   *Id.*   Because the discretionary function exception was designed to insulate policy decisions, the second-prong analysis looks to "whether the nature of the actions taken implicate public policy concerns, or are susceptible to policy analysis." *Ohlsen*, 998 F.3d at 1161 (quotation omitted).   As the party asserting federal jurisdiction, Plaintiff bears the burden of establishing that either prong has not been met.   *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008).

Plaintiff's Objection focuses only on the first prong of *Berkovitz*. [Doc. 189 at 5–7].

Judge Dominguez Braswell observes that "[o]ther than what was already rejected in prior

orders, Plaintiff does not cite any statute, regulation, or policy that specifically directs Lt.

Medrano or Warden True as it concerns the supervision of their staff." [Doc. 187 at 20

(citations omitted)]. Plaintiff's Objection does not address this deficiency and fails to

identify any federal regulations or policies that would have required Lieutenant Medrano

or Warden True to supervise Officer Santistevan in a particular manner. *See generally*

[Doc. 189]. Instead, Plaintiff reiterates a theory rejected by Judge Dominguez Braswell:

that Colorado's special relationship doctrine requires prison officials to intervene on

Plaintiff's behalf. [Doc. 187 at 20–21; Doc. 189 at 6–7]. Plaintiff is correct that Colorado

tort law sometimes imposes a duty on an actor to protect a person with whom he shares

a "special relationship." *See Solano v. Goff*, 985 P.2d 53, 54 (Colo. App. 1999) (citing

*Davenport v. Cmty. Corr. of Pikes Peak Region, Inc.*, 962 P.2d 963 (Colo. 1998)). But for

purposes of the discretionary function exception, Plaintiff must identify a "*federal* statute,

regulation, or policy" that requires the relevant federal officials to act. *Berkovitz*, 486 U.S.

at 536 (emphasis added). "Considering state tort law as a limit on the federal

government's discretion at the jurisdictional stage impermissibly conflates the merits of

plaintiffs' claims with the question whether the United States has conferred jurisdiction on

the courts to hear those claims in the first place." *Sydnes*, 523 F.3d at 1184. Accordingly,

Plaintiff cannot invoke Colorado tort law to demonstrate that Lieutenant Medrano's and

Warden True lacked discretion in supervising their subordinate. *See id.*

Because Plaintiff does not contest that BOP officials' supervision of their

subordinates is "susceptible to policy analysis," *Ohlsen*, 998 F.3d at 1161 (quotation

omitted), the Court need not address the second *Berkovitz* prong here, *see also* [Doc. 123 at 25–26 (finding that prison security and supervision of correctional officers are grounded in policy and satisfy second *Berkovitz* prong)]. Plaintiff therefore fails to carry his burden to establish that the discretionary function exception does not apply. Claims Eight and Ten are therefore barred by the FTCA. *See Garcia v. U.S. Air Force*, 533 F.3d 1170, 1175–76 (10th Cir. 2008) ("If the discretionary function exception applies to the challenged conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit." (quotation omitted)). The Court therefore **OVERRULES** the Objection and **ADOPTS** the Recommendation that Claims Eight and Ten be **DISMISSED with prejudice.**[3]

---

[3] "Jurisdictional dismissals ordinarily should be entered without prejudice." *Barnes v. United States*, 776 F.3d 1134, 1151 (10th Cir. 2015) (emphasis omitted). Dismissal with prejudice may be appropriate, however, when the jurisdictional question is intertwined with the merits of the claim, such that the motion to dismiss can be construed as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Blackburn v. United States*, No. 20-8005, 2021 WL 3027979, at *7–8 (10th Cir. July 19, 2021) (citing *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997)). The Tenth Circuit has recognized that application of the discretionary function exception intertwines with the merits of the underlying claim. *See Garcia*, 533 F.3d at 1176; *Awad v. United States*, 807 F. App'x 876, 878 (10th Cir. 2020) (noting that district court "correctly" converted Rule 12(b)(1) motion invoking discretionary function exception); *cf. Blackburn*, 2021 WL 3027979, at *8 (construing motion to dismiss pursuant to intentional torts exception as a Rule 12(b)(6) motion). "When 'it is patently obvious that a plaintiff cannot proceed with her claims, and any further opportunity to amend would be futile because her claims would still be barred,' dismissal with prejudice is appropriate." *Blackburn*, 2021 WL 3027979, at *8 (brackets omitted) (quoting *Knight*, 749 F.3d at 1190–). Here, Plaintiff has filed four iterations of his complaint, [Doc. 1; Doc. 36; Doc. 75; Doc. 174], and this Court has twice found that he fails to allege a failure-to-supervise claim that is not barred by the discretionary function exception, *see* [Doc. 123 at 23–26]. He has not requested leave to amend, and there is no indication that a fourth amended complaint would identify any federal regulations or policies that render any supervisory actions non-discretionary. The Court therefore concludes that further amendment would be futile and dismissal with prejudice is appropriate. *See, e.g., Melnick v. Johnston*, No. 19-cv-00154-CMA-KLM, 2022 WL 1266614, at *2 (D. Colo. Apr. 28, 2022) (finding dismissal with prejudice appropriate where plaintiff failed to cure pleading deficiencies despite multiple opportunities).

## CONCLUSION

For the above reasons, **IT IS ORDERED** that:

(1)    Plaintiff's Objection to the Magistrate Judge's Recommendation [Doc. 189]

is **OVERRULED**;

(2)    The Recommendation of United States Magistrate Judge [Doc. 187] is

**ADOPTED**;

(3)    Defendant's Partial Motion to Dismiss Third Amended Complaint [Doc. 177]

is **GRANTED**;

(4)    Claims Four, Five, Eight, and Ten of Plaintiff's Third Amended Complaint

[Doc. 174] are **DISMISSED with prejudice**;

(5)    Claims Six and Seven and Claim Nine of Plaintiff's Third Amended

Complaint [Doc. 174] remain;

(6)    This matter is **REFERRED** to Judge Dominguez Braswell to conduct a

Status and/or Scheduling Conference; and

(7)    The Clerk of Court is **DIRECTED** to mail a copy of this Order to:

Khalfan Khamis Mohamed
#44623-054
Florence High
U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 7000
Florence, CO 81226

DATED:  March 28, 2025          BY THE COURT:

_____

Nina Y. Wang
United States District Judge