IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Mohamed v. U. States, No. 21-CV-02676-NYW-MDB

PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff (plf.) files this motion to ask the court to order the government (govt) to produce to plf. the relevant, requested documents (docs./doc.) and information (info.), or, in the event that the requested documents are not there, the govt. produces adequate, related documentation and explanation as to why the requested docs. are not there.

### A. The Government Failed to Produce any Videos And Waited for Four Years to Reveal That No Video Exists

Only during the scheduling conference on May 29, 2025 before this court the govt. for the first time revealed that it retains no video related to the alleged abuse at issue here. The Govt. claim at that time that the videos have been reused by the BOP staff.

When plf. submitted his requests for production, he requested videos/cameras for three particular days: 15.4.2020, 16.4.2020, and 20.4.2020; the first and third day videos requests were for both: videos from handheld cameras and the range surveillance cameras. The request for 16.4.2020 was only for the surveillance camera, since, per plf's own experience, there's no hand-held camera that day. See Plf's Request and govt's response (App./Attachment) p.1-2. After govt's long objections, it stated that "it does not have any video recordings in its possession." Id. p.3. When plf. inquired from the govt. about why there's no cameras and who made the decision not to maintain the cameras...etc; the govt. further advanced its response by now claiming that: "There is no evidence that handheld video camera footage was ever recorded of the escort in question." Id. p.9 (Resp. to Interrog. 5). See also Id. p.10 (Repeating similar response when plf. inquired who made the decision not to maintain the videos).

The court should order the govt. either to produce the cameras/videos (both kind of videos) or adequate documentation and explaination; why the videos were not retained. That's because

1.

the videos were infact made from all three days... As detailed below.

### B. The ADX Video Taped The Events of 4-15-2020 and 4-20-20, and There should be Surveillence videos of the Events of 4-15-20, 4-16-20 & 4-20-2020

About four years ago, in his original complaint, as well as in his 3rd Amended complaint, plaintiff, without then knowing that the govt. would claim later on that there's no videos, ptf. alleged in his complaint that the events of 4-15-2020 as well as those of 4-20-2020 were video taped... Ptf. explained his efforts to show his physical conditions to the cameras... etc. see Doc. 174 at 145-163. So, there were videos. As with surveillence videos of the range; those are working at ADX on 24/7 basis.

Regarding these range cameras the govt. incorrectly stated that they're subject to 10-days retaintation. Id, p.8, and in this case, the camera "was not retained beyond the normal retention schedule." Id, p.9. Right after that, govt. said "there is no evidence that handheld camera... was ever recorded..." Id. However, that could only be so by the govt. deliberate decision to destroy the surveillance footage. That's because that Range footage would've necessarly revealed that infact, the ADX staff did video tape the events of 4-15-2020 and 4-20-2020. To get rid of that incriminatory evidence the govt. decided to destroy both types of video footages.

### 1. The Destruction of These Evidence Occurred Regardless of BOP's Awareness of Ptf's. Serious Allegations... & Despite of BOP's Requirements to Retain such Evidence...

Soon after the alleged abuse of 4-15-2020, ptf. started to complaint to various staff and offices; the next day; 4-16-2020 he complained to ADX's operation Lt., Lt. Gurduno while also submitting to him two pages written complaint. See Appx p. 18-19. Per ptf's request, Gurduno reviewed the cameras and promissed ptf. that the videos will be preserved, and investigation will be conducted. He said, after reviewing

2.

the video, that there were definitely issues that must be addressed.

On the same day, 4·16·2020, plf. talked to Lt. Lopez, who came to see plf. for previous, unrelated written request to another staff member... As he did with Lt. Gurdung, plf. complained to Lt. Lopez on the previous day abuse and showed him his injured wrists. Lopez told plf. that Lt. Gurdung will investigate the issue. Plf. never told Lopez or any other staff member that there was no allegation of abuse from him that occurred on 4·15·2020. Lopes' false statement that he made later, was just as the destruction of the video. Intended to hide the abuse. See Appx. p. 20-21 (Lopez "Fact Finding" dated 5·11·2020 claiming falsely that plf. said "I have not been assaulted." Id. p. 20.

On 4·24·2020, plf. initiated his Adm. Remedy grievance. That was the first time since the assault was allowed to access the appropriate forms. See Appx. p. 22. Now: all of these above measures by plf. occurred within less than 10-days of retention of surveillance cameras claimed by the guvt. above. Beside these, plf. complained in writing or verbally to his D-unit Team staff whom he also asked to preserved the necessary videos. He also complained to psychology staff and others. On 4·30·2020 plf. filed his BP-9 Adm. Remedy to ADX warden who assured him an investigation. See Appx p. 23-25. See also BP-11 and General Counsel's response. Appx. p. 26-28.

On May 19, 2020, plf. sent his complaint to the BOP's Office of Internal Affairs (OIA) concerning the abuses including the physical abuses at issue here. See Appx p. 29-37.

On June 29, 2020 plf. sent his complaint/claims under the administrative FTCA. See Appx. 38-41.

On Oct. 13, 2020 plf. sent his FOIA Request asking, among other records, the videos in question here. See Appx. 42-46.

BOP's Regulations further require the retention of the above evidence. See Pr. Statement # 5566.06; Use of Force and Application of Restraints (UA). The Regulation requires the BOP staff to "obtain a video camera immediately and record any use of force incident." Id. at ¶4 c. This very

3.

regulation applys to a hunger strike prisoner who, like Plf, refuses to go through medical assessment without the presence of use of force team (Plf's wisdom here is always to "get the staff bring the team along with the handheld cameras so to avoid any claim from staff that they assaulted him because he was violent towards them..."). See Pro. Statement "Hunger Strike" # P.5562.05 (2005) at 10 c. ("when inmate refuses to comply" with physician's order," as with any other use of force, these events should be video taped").

As to the time period to keep these videos, the use of force Pr. statement says: "The captain must maintain all documentation, including the videotape and the original BP-E 583, for a minimum of 2½ years. A separate file must be established on each use of force incident". Id at 14 d. (The BP-E 583, also called "Report of Incident" is a document that provide info. such the type of force used, the staff and prisoner involved, the injury occurred,... and the reason for the use of force). Based on the events of 4.15.2020 and 4.20.2020, there should be at least two seperate videos (hand-held), two BP-E-583 Reports and two files. The govt. failed to produce any of these documents. The court should compel it to do so.

2. <u>Per Gov't's own Confession, At least the Range Cameras were Destroyed while the BOP was Already Aware of Plf's serious Allegations... And such Destruction Occurred well beyond the 10-Days that The Govt. Now Claims to be the Limitation...</u>

In responding to Plf's interrog #4 the govt stated that Lt. Lopez reviewed the range surveillance camera between may 7 and may 10, 2020. Appx. p "8. Now, this fact reveals two important facts: first: the review and subsequent destruction of the cameras took place after the BOP staff being fully informed of Plf's allegations... As stated above; Plf. continuously complained to various staff since at least 4.11.2020. Second: The Cameras were kept well over "10 days schedule" claimed by the govt earlier. (see Resp. to Interr. # 5, Appx. p 9, saying the Camera "was not retained beyond the normal retention schedule"). In fact, by may 7 and may 10, 2020, it would be

4.

22 to 25 days since 4-15-2020's events.

In short, the govt. destroyed the videos despite of its awareness of pcf's serious allegations. It could've kept the video as it did for over three weeks. But it chose to get rid of them because the videos couldn't help govt's case; couldn't justify the violent act against pcf.

The court should force the govt. to produce the videos or adequate documentation as to why the videos were destroyed under the above shown conditions.

### C- Other Requests that the Govt. Failed to Answer and to Produce

**Interrogatory #7:** Pcf. requested the list of staff involved in the events of 4-15-2020. The govt. only named three staff members. See Appx p.10. Pcf needs all names for subpoena's purpose. Here again, the importance of videos is manifest. The govt. attempt to hide the identity of those involved is prejudicious to pcf. Pcf knows that several additional staff were present beside the three named by the govt. For example, Lt. Medrano was there. The govt. named Medrano in its initial disclosure as one of staff may have info. on pcf's allegation. But the govt. decided to omit his name here. Also, pcf. knows that a female staff member was operating the handheld video camera. He doesn't know her name.

The court should force the govt to name all staff. Again, other relevant docs. such as BP-E583 would've resolved some of these issues since that doc. is specifically designed to record such staff.

**Production of Docs. Requests #3,4,5:** Pcf. requested these docs. However, govt. only provided some irrelevant docs. or failed to produce any. The govt. also listed long list of erroneous objections. Finally, the govt. in all three requested docs. admitted that it's withholding responsive docs. for various objections and reasons. see Appx. p. 13-15.

The court should order the govt. to provide these and all relevant docs. and info. Alternatively, the court

5.

should order the govt. to turn over all these documents to the court so the court can independently review them and then decide whether pcf. should be provided with docs. or not.

Request doc. #5 involves requests/complaints that pcf. sent to various staff/officials following the alleged abuse. The govt's refusal to provide such copy to pcf. would allow it to claim later that pcf. didn't actually submit any such requests, and whatever copy pcf. may have in his possession, the govt. may dispute its authenticity.

Hence, the court should order the production of all these materials. Any failure to provide pcf. with these things will necessarily prejudice him.

## Conclusion:

For the reasons stated above, the court should grant this motion.

January 2, 2025

Ichalfon Ichi Mohamed
USP Florence, Box 7000
Florence, CO 81226                    /s/ mohamed

---

## Certificate of Service

I, Ichalfon Ichi Mohamed, hereby certify that on Jan. 2, 2025, have submitted for mailing my motion to compel discovery. Addressed:

Office of the Clerk, USDC, 901-19th St., Room A 105
Denver, CO 80294-3589

Ichalfon Ichi Mohamed
USP Florence, Box 7000
Florence, CO 81226                    /s/ mohamed

6.

## EXHIBIT 2:
## DECLARATION OF MAILING:

I, Khalfan Kh. Mohamed hereby declares under penalty of perjury pursuant to 28 USC § 1746 that the below statement is true and correct:

On January 2, 2026, I have submitted for mailing my motion to Compel discovery along with attached Appx/Exhibit; I've submitted it to the appropriate staff member as a legal mail with sufficient prepaid postage stamps for the first class mail, Addressed to:

Office of the Clerk, USDC, 901-19th St., Room A105, Denver, CO 80294-3589.

January 2, 2026

Khalfan Kh. Mohamed
USP Florence, Box 7000
Florence, CO 81226                    /s/ mohammed